ATTERBERRY *v*. STATE.

Opinion delivered October 22, 1892.

1.  *Larceny—Servant.*

The felonious taking of goods from the owner's store by a clerk who had custody of them is larceny, and not embezzlement.

2.  *Who are principal offenders.*

One who, in pursuance of a previous agreement, is present at the commission of a larceny and receives and carries away the stolen goods is liable as a principal in the commission of the crime.

3.  *Jury retiring to deliberate—Oath to officer.*

It is too late after verdict to object, for the first time, that a jury retired from the court in charge of an officer to whom the special oath has not been administered, where it appears that the defendant was present when the jury retired and neither asked that the special oath be administered to the officer nor objected to his taking charge of the jury, and it does not appear that either the officer or the jury was guilty of any misconduct.

Appeal from Marion Circuit Court.

B. B. HUDGINS, Judge.

Robert Atterberry and Abe Williams were indicted for larceny of three suits of clothes and other property, of the total value of $59, belonging to W. C. McBel. Both were convicted. Atterberry has appealed.

The evidence is sufficiently stated in the opinion. The court instructed the jury, at the instance of the State, as follows :

"2. If you find that E. C. McBel feloniously took and carried away goods such as is described in the indictment, of the property of W. C. McBel, of the value of more than ten dollars, and that defendants were present, aiding, abetting, ready and consenting to aid and abet in said act, you would be authorized to convict the defendants ; provided said defendants knew at the time said goods were being stolen by the said E. C. McBel,

and this is true although you may find that the said
Ernest McBel was at the time the clerk or agent of the
said W. C. McBel to sell said goods." The court
refused to give the following instruction requested by the
defense:

"1. I charge you that in larceny the larceny is
complete the moment the goods are taken in possession
by the person stealing same; and that if, after that, one
receives the goods knowing them to have been stolen,
this, of itself, could not constitute the crime of larceny
on the part of one so receiving them."

Appellant insists that the evidence was insufficient
to support the verdict, and that the court erred in giving
the above instruction asked by the State and refusing to
give the instruction asked on behalf of the defense.

*DeRoos Bailey* for appellant.

1. The court erred in failing to administer the oath
required by the statute. Mansf. Dig. secs. 2265, 2268;
Bish. Cr. Pr. vol. 1, secs. 991–2–3; Bish. St. Cr. secs.
86, 90.

2. The first instruction should have been given.
Bish. Cr. Law, vol. 2, secs. 794, 799; 37 Ark. 274; 41
*id.* 173.

*W. E. Atkinson*, Attorney General, and *C. T. Cole-
man* for appellee.

It was error to fail to administer the oath to the
officer, prescribed by sec. 2265, Mansf. Dig. 38 Ill. 514;
44 *id.* 452; 124 *id.* 218; 14 S. W. Rep. 480; 46 Hun. 667;
16 Wis. 355. Is it a *reversible* error? The record recites
that the jury retired in charge of a *sworn* officer. No
objection was made at the time, 116 Ind. 51; 14 Bush,
340. Our law is not so strict as in some States. 32 Ark.
309. No prejudicial error appears.

2. The instruction properly refused. Mansf. Dig.
secs. 1505, 1508; 32 Ark. 727; 42 *id.* 94.

HEMINGWAY, J.    The appellant alleges as a ground
for a reversal that the verdict is not supported by the
evidence.   In determining it we are called to decide
whether the evidence warranted a finding that he was
guilty of any offense; and if so, whether it was larceny,
or some other crime, as embezzlement or receiving stolen
property.

As to the material facts, there is no controversy.
The defendant was a witness in his own behalf, and his
statement agrees in all essentials with the testimony of
the State's witnesses.   That E. C. McBel was a sales-
man in the store of his father, that he took, from the
goods kept for sale there, articles charged to have been
stolen, that he handed them to the defendant and one
Abe Williams, who were at the store, and they carried
them away, and that this was done in pursuance of a pre-
vious arrangement between the parties, are admitted
facts.   It is further admitted that the defendant and
Abe Williams knew that the goods belonged to W. C.
McBel, and not to E. C. McBel.

The excuse defendant offered for taking the articles
was that E. C. McBel had promised to give them to him
and Williams by way of compensating them for services
to him, and that they thought he had authority from the
owner to do it.

I.   Whether the act was criminal or not depended    1. Larceny
upon the animus of the defendant in doing it.   If he   by servant.
really believed that such authority existed, and took them
under such belief, he would not be guilty of any offense,
even though the authority did not exist; but if he knew
that the authority was wanting, his act was criminal,
for he knew that W. C. McBel owned the articles, and
that they were taken with the intent to deprive him of
them.   That he was not mistaken as to the authority,
but on the contrary knew there was none, has been found
by the jury; and we think the circumstances of the

taking, as detailed by the defendant and other witnesses, inevitably lead to that conclusion. As this finding of a felonious intent is sustained by the evidence, we have next inquired whether the facts make a case of larceny against the defendant. The articles taken were kept for sale by their owner in a store in which E. C. McBel had authority to be present and sell the goods. They were legally in the possession of the owner, even if for a time left in the custody of the salesman; and an appropriation of them by the latter was a trespass on the possession of the former, within the meaning of the law defining larceny. *Powell* v. *Slate*, 34 Ark. 693; 2 Bish. Cr. L. (8th ed.) secs. 365, 823–6 *et seq.*

2. Who are principal offenders.

As the goods were appropriated in the presence of the defendant and in execution of an agreement with him, and the defendant was there to receive and carry them away, he was a party to the act of appropriation, equally as if it had been done by his own hand, and was likewise liable to prosecution for it. Mansf. Dig. sec. 1508. We think the conviction for larceny was in accordance with the evidence.

II. From what has been said, it follows that there was no error in giving the second instruction for the State or in refusing the first for the defendant. The former was a fair declaration of the law of the case; and there was no evidence to which the latter was pertinent.

3. Administering oath to officer in charge of jury.

III. It is urged, as a ground for reversal, that upon the final submission of the cause the jury retired from the court room to consider of its verdict in charge of an officer who had not taken the oath prescribed by section 2265 of Mansfield's Digest. This presents the most difficult question in the case. We think it proper that such oath should be administered; for if the section relied upon relates only to the care of the jury before final submission of the cause, the common law practice requires that the officer put in charge of the jury when

the cause is submitted shall take the special oath. 1
Bish. Cr. Pro. sec. 991-2-3 ; *Lewis* v. *People*, 44 Ill. 452 ;
*McCann* v. *State*, 9 Sm. & M. 465. Accepting this as
the better and proper practice, what effect does its omis-
sion have upon the verdict ? It has been held by some
courts, that it was fatal to the verdict, and that, too,
when the objection was first presented by motion for a
new trial. Cases *supra*. But a different view has been
taken by other courts. *Davis* v. *State*, 15 Ohio, 72 ;
*Bennett* v. *Com*. 8 Leigh, 745. We are constrained to
think that there is no reason why the omission in all
cases and under all circumstances should vitiate the ver-
dict. Under our system of trials in felony cases, the de-
fendant is present in court. He is aided by counsel of his
own choice, when he is able to employ them ; of the court's
appointment, when he can employ none. His attitude is
widely different from that of the defendant in the courts
of England a century ago. The court still owes him an
absolutely fair and impartial trial—the right to make
proof of everything he offers in denial, mitigation or
excuse of the act charged, and to have it fairly passed
upon by a jury ; but he owes to the court fair dealing as
well as candor, and should not be permitted to undo its
work on account of omissions which he deemed too trivial
at the time to bring to its attention, and which are not
shown or charged to have affected the fairness of the
trial or prejudiced his rights. As a general rule, when
the court is about to do what it should not do, or to omit
what it should do, the defendant should call attention to
the threatened error and object to it, and if the court
then commits it, he must save his exception; and unless
this is done the act or omission can not be urged as
ground for a new trial. This rule applies to the exclu-
sion of proper, or the admission of improper, evidence ; to
the refusing of proper, or the giving of improper, instruc-

tions. It rests upon the duty to deal fairly with the court, which forbids that a losing litigant should complain of errors which the court might and presumably would have avoided, or cured in apt time, if they had been called to its attention. Guided by the reason of this rule, this court held, in *Ruble* v. *State*, 51 Ark. 126, which was a prosecution for a misdemeanor, that it was too late after a verdict to object for the first time that a jury, taken from the regular panel which had been sworn for the term, had not been specially sworn, as the statute provided, to try that case; and in *Hayden* v. *State*, 55 Ark. 342, which was a prosecution for a felony, that the verdict would not be set aside because the defendant was tried without arraignment or plea, where the trial was had as upon a plea of not guilty. Applying the reason of those cases to the question in hand, we hold that it is too late, after verdict, to object, for the first time, that a jury retired from court in charge of an officer to whom the special oath had not been administered, where it appeared that the defendant was present when it retired and neither asked that the special oath be administered to him nor objected to his taking charge of the jury, and it does not appear that either the officer or the jury was guilty of any misconduct. It appears from the record in this case that the jury retired in charge of an officer acting under the general oath of his office, and that the defendant and his attorney were present; but it does not appear that he asked the court to administer the special oath or objected to the officer taking charge of the jury.

He conceded to the jury, thus attended, the right to determine the cause, if it gave him his liberty; and should not be permitted to question such right, merely because it took an unfavorable view of his case. There is not a suggestion that the jury or the officer in charge

of it was guilty of any misconduct, and we are of the opinion that the matter in hand furnished no ground for a new trial.

Affirmed.