## LEE v. STATE.

### Opinion delivered February 24, 1906.

1. APPEAL—HARMLESS ERROR.—The admission of incompetent hearsay
   evidence tending to prove an established and undisputed fact is not
   prejudicial. (Page 79.)

2. EVIDENCE—COMPETENCY.—In a prosecution for manslaughter, in which
   the question of malice and premeditation was not involved, evidence
   of another that the accused went to town on the day of the killing for
   the purpose of procuring evidence to put deceased under bond to
   keep the peace was neither competent nor material. (Page 80.)

3. CRIMINAL LAW—ADMONITION TO JURY.—Where the record in a crim-
   inal case shows that the jurors were kept in charge of an officer, and
   were properly admonished at each adjournment, as required by Kir-
   by's Digest, § 2390, except once when the court merely admonished
   the officer to "see that nobody talks to them, and don't you talk to
   them, and don't you let anybody else talk to them, and keep their
   minds free from anything until the proper time," this admonition,
   though addressed to the officer, instead of the jury, was sufficient
   (Page 80.)

4. SAME—WAIVER OF OBJECTION FOR FAILURE TO ADMONISH JURY.—Where
   the jury are kept together in charge of an officer, and are permitted
   to retire without being admonished, the accused waives the right
   to take advantage of the omission by failing to ask for an admonition
   of the jury. (Page 80.)

Appeal from Polk Circuit Court; *S. A. Downs,* Special
Judge; affirmed.

*Hal L. Norwood* and *Scott & Head,* for appellant.

It was error to exclude testimony to prove that defendant
had gone to Wilton to obtain evidence to put deceased under a
peace bond. It was competent as tending to prove defendant's
motive. 49 Iowa, 328. Past threats, hostile acts and circum-
stances tending to show malice on the part of deceased toward
the defendant are admissible for the purpose of showing appre-
hensions of personal danger from the deceased. 17 Ga. 465; 11
Tex. App. 289; 11 Ind. 23; 56 Cal. 251; 20 So. 232; 68 Ala. 156;
71 Ala. 351. Threats are admissible for the purpose of showing
the motives of both parties. 29 Ark. 248; 69 Ark. 149.

The instruction asked by defendant, defining what the jury
might consider in determining whether it appeared to defendant
that his life was in danger, from the threats and harsh treatment
of deceased and his going continuously armed, should have been

given. 10 So. 650; 81 S. W. 387; 61 S. W. 123; 55 S. W. 282; 89 S. W. 840. It was error not to administer to the bailiff in charge of the jury the statutory oath. 16 N. E. 81; 44 Ill. 452; 58 N. E. 620; 68 Ark. 401.

*Robert L. Rogers, Attorney General,* for appellee.

The defendant, being present and failing to object to the omission to repeat the admonition to the jury, can not raise the question now. 56 Ark. 518. The jury were not permitted to separate, hence 68 Ark. 401 does not apply.

McCulloch, J. A judgment of conviction against appellant in a former trial was reversed by this court (*Lee* v. *State,* 72 Ark. 436), and upon another trial he was again convicted of the crime of manslaughter and sentenced to a term of three years in the penitentiary. He again appeals to this court.

The facts, briefly stated, are about as follows: H. McGough, the person killed, was a constable residing at Wilton, Little River County, where the killing occurred. Appellant lived at Richmond, in Little River County. Ill feeling is shown to have existed between the parties, growing out of certain accusations against appellant of cattle-stealing and alleged mistreatment of appellant by McGough while in custody of the latter as constable.

On the day on which the killing occurred appellant came to Wilton for the ostensible purpose of procuring subpœnas for witnesses in the trial of the larceny cases against him, and also to procure evidence to put McGough under bond to keep the peace. Appellant was in the store of Smith & Coats, when McGough came into the store approaching appellant, and the latter drew his pistol and shot McGough, killing him instantly. There is conflict in the testimony as to what occurred between the two men. The evidence on the part of the State tended to show that McGough came into the store and accosted appellant in friendly terms as he approached him, and without any hostile demonstration, and that appellant drew his pistol and shot him without justification. The State's evidence tended to show that McGough was unarmed at the time; that he was in his shirt sleeves, and had left his coat and pistol in a saloon near by, and that no pistol was found upon or near his body after he was killed. Appellant testified that he went into the store of Smith

& Coats, and, while waiting for a clerk to find some cartridges for his pistol, heard a voice behind him saying "Hello, Jim!" or "Here, Jim!" and, looking around, saw McGough approaching with his hat in his left hand when he (appellant) "whirled, and turned around, and drew my pistol quick, and fired. As he drew his pistol, I drew mine." He testified that McGough had a pistol in his hip pocket, and introduced other witnesses whose testimony tended to show that a 38-caliber pistol was found near the body of McGough soon after he was killed. He also introduced testimony to the effect that McGough's reputation was that of a turbulent, dangerous, over-bearing man, and one witness testified that he told appellant that "McGough told me that his way of attacking a man was to raise the racket, and, when the man started onto him, to slap him in the face with his hat, thereby make him drop his head, then shoot him."

Much testimony was introduced on both sides as to the character of McGough, the former occurrences between the two men, and the circumstances attending the killing, and as to whether or not McGough was armed.

The State was permitted to show by a witness that immediately before the killing—just before McGough went into the store where he was killed—he said to the witness that he (McGough) stopped in the saloon, took off his pistol and coat, and hung them up. Appellant excepted, and assigns this ruling of the court as error. We think this statement was incompetent, and should not have been admitted, but we can see no prejudice resulting from it. It is undisputed that McGough had left his coat and pistol (a large one worn in a belt or scabbard) in the saloon near by, and that he was in his shirt sleeves when he was killed. It is not contended that he had this pistol with him when he was killed, but that he had a smaller one in the hip pocket of his trousers. The whole theory of the defense rested upon the contention that McGough had two pistols, one of which (the large one) he had left in the saloon, and the smaller one he carried in his hip pocket. A witness was introduced by appellant to prove that McGough said on one occasion that "he never wore pants without a little 38 S. & W. pistol in his pants' pocket. He said he carried it all the time." The whole controversy over the question as to McGough being armed was whether he had a small pistol in his

pocket at the time he was killed, and not whether he had the large pistol. The statement introduced related only to the large pistol, so it was manifestly harmless error of the court in admitting it.

Error is also assigned in the refusal of the court to permit appellant to prove by a witness that he (appellant) went to Wilton that day for the purpose of procuring evidence to put McGough under bond to keep the peace. This was not competent. Nor was it material, in view of the fact that appellant was on trial for manslaughter, and the question of malice and premeditation was not involved.

The court gave to the jury thirteen separate instructions asked by the State, and fifteen asked by appellant's counsel, and refused four asked by the latter. Error is assigned in giving some of the instructions asked by the State and refusing those asked by appellant. Without setting out the instructions or discussing them in detail, it is sufficient to say that we have considered them carefully and find no error in either giving or refusing instructions. They completely and correctly put every phase of the case before the jury, and left nothing further to be properly said in declaring the law.

It is also contended that error was committed by the court in failing to properly admonish the jury when adjournments were taken during the progress of the trial. The record shows that the members of the jury were kept in charge of an officer and not allowed to separate, and were properly admonished at each adjournment or recess except once, when the court merely admonished the officer in charge to "see that nobody talks to them, and don't you talk to them, and don't you let anybody else talk to them, and keep their minds free from anything until the proper time." This admonition was given in the presence of the jury and, though addressed to the officer in charge, was a sufficient reference to the original admonition to the jury to comply with the requirements of the statute.

Moreover, the jurors were not allowed to separate, and no prejudice is shown to have resulted from the failure to admonish. The statute requiring the court to admonish the jury is mandatory, but where the jurors are kept together, and the defendant is present when the jury retires for an adjournment of the

court, and fails to ask for an admonition to the jury, he waives it and can not, after the verdict is rendered, take advantage of the omission. *Atterberry* v. *State,* 56 Ark. 515.

This disposes also of the assignment of error in the court failing to administer the oath to the officer in charge of the jury when it retired on one occasion.

The case of *Johnson* v. *State,* 68 Ark. 401, relied upon by counsel for appellant, is not controlling in this case. There the jurors were permitted to separate without admonition, and the court held that it was reversible error where it was not affirmatively shown that they were exposed to no improper influences.

We find no error in the proceedings, and the judgment is affirmed.