WIMBERLEY v. STATE.

4607                                          228 S. W. 2d 991

Opinion delivered April 17, 1950.

*Byron Goodson,* for appellant.

*Ike Murry,* Attorney General, and *Jeff Duty,* Assistant Attorney General, for appellee.

DUNAWAY, J. Everett (Shine) Wimberley appeals from a conviction of assault with intent to kill. He was charged with this crime by information filed by the prosecuting attorney as a result of the shooting on November 9, 1949, of Dorothy Dugan Wimberley, ex-wife of appellant. Upon trial of the cause, Wimberley was found guilty and sentenced to ten years imprisonment.

For reversal, appellant urges several alleged errors, two of which have to do with the admissibility of certain testimony, while the others relate to the closing argument of the prosecuting attorney.

At the trial the State called Dr. A. H. Rogers, a physician of Mena, to testify concerning the location of the bullet wounds on the victim's body. The defendant objected on the ground that Dr. Rogers' testimony would be a privileged communication, and that Mrs. Wimberley, who had remarried the defendant following the shooting, had not waived the privilege. In fact the doctor stated that she had specifically requested him not to testify. Over this objection, the doctor was permitted to state that he had examined Mrs. Wimberley after she was wounded; to describe the location, nature and extent of her wounds and to state that she was hospitalized and treated by him. Following a recess in the trial, on mo-

tion of the State this testimony was stricken and the court admonished the jury not to consider it. Appellant, however, argues that even though the testimony objected to was later excluded, the effect of the doctor's testimony was not erasable and was prejudicial to him.

We think the doctor's testimony as to the nature, extent and location of the wounds was admissible. At common law, communications between physician and patient were not privileged, and it is only by statute that a physician cannot be compelled to testify as to an examination of a patient. 3 Wharton's Criminal Evidence (1935 Ed.) § 1240; Underhill's Criminal Evidence (1935 Ed.) § 341. The statutory foundation for claiming privilege as to a physician's testimony appears in Ark. Stats. (1947) § 28-607: "Hereafter no person authorized to practice physic or surgery and no trained nurses shall be compelled to disclose any information which he may have acquired from his patient while attending in a professional character and which information was necessary to enable him to prescribe as a physician or do any act for him as a surgeon or trained nurse. . . ."

In *Mutual Life Ins. Co.* v. *Owen*, 111 Ark. 554, 164 S. W. 720 at page 559 we said that the purpose of this statute "is to cover the relation of physician and patient with the cloak of confidence, and thus to allow a greater freedom in their communications to each other in regard to matters touching the disease of the patient. Such statutes are enacted as a matter of public policy to prevent physicians from disclosing to the world the infirmities of their patients."

We considered a similar objection in a case where the defendant was tried on a charge of rape and convicted of carnal abuse. In that case, *Cabe* v. *State*, 182 Ark. 49, 30 S. W. 2d 855, we said at page 52: "Appellant next contends for the reversal of the judgment because Dr. Gray was permitted to testify concerning an examination he made of the prosecutrix a few hours after the alleged crime was committed. The introduction of his testimony was objected to on the ground that it was privileged. The doctrine of privileged communications

only extends to the physician's patients and himself. A defendant in a prosecution for crime has no right to claim the protection. *Davenport* v. *State,* 143 Miss. 121, 108 So. 433, 45 A. L. R. 1348.''

The rule is thus stated in 3 Wharton's Criminal Evidence (1935 Ed.) § 1246: ''The object of the privilege is to protect the patient; it is conferred on him, and belongs to him or his personal represenative. It extends only to the patient and the physician and cannot be claimed by another who is party to a criminal prosecution. So, the accused in a murder prosecution cannot object to the testimony of a physician as to the nature of the deceased's wound and the cause of his death.''

The weight of authority supports our holding in the Cabe case, *supra,* that the doctrine of privilege is for the benefit of the patient, and that the defendant in a criminal prosecution cannot object to the testimony of a physician concerning information gained from the victim by the physician in his professional capacity. See Annotation 2 A. L. R. 2d 647 and cases therein collected.

In *People* v. *Lay,* 254 App. Div. 372, 5 N. Y. Supp. 2d 325, at page 327, the New York court discussed this question:

''The conviction was based upon a confession of defendant and the relevant testimony of a physician who, upon examination and treatment of the woman, found a bullet wound in her body and extracted the bullet. It is claimed that the testimony of the doctor was inadmissible under § 352 of the Civil Practice Act, applied to criminal trials by § 392 of the Code of Criminal Procedure. This court holds that it was admissible.

''It could not have been intended by the Legislature that in such a case the Act should be the means of protecting a criminal from just punishment. *Pierson* v. *People,* 79 N. Y. 424, 35 Am. Rep. 524; *People* v. *Harris,* 136 N. Y. 423, 33 N. E. 65. Those cases involved convictions for murder. But the essence of the decisions applies here. There was no disclosure by the doctor which would subject the woman to prosecution, damage her

reputation, or wound her feelings, as was the case in *People* v. *Murphy*, 101 N. Y. 126, 4 N. E. 326, 54 Am. Rep. 661. Section 1915 of the Penal Law, which requires every physician attending a case of bullet wound to report such case at once to the police authorities, militates against a construction favorable to a defendant in a criminal cause. The statutory prohibition, the birth of which took place in the State of New York, is not accepted in all jurisdictions. 5 Wigmore on Evidence, Second Edition, § 2380. Its scope should be limited to its purpose."

By Act 258 of 1949, the General Assembly of Arkansas enacted "An Act to Require Doctors, Hospitals, and others to Report Treatment of Knife and Gunshot Wounds to Peace Officers." Physicians are required to report immediately to the appropriate peace officers treatment of all knife or gunshot wounds that appear to have been intentionally inflicted. Failure to report is punishable as a misdemeanor.

We agree with the reasoning in the Lay case, *supra*, that a construction which would serve as a cloak for crime should not be placed upon a statute which as we have said, was enacted "to prevent physicians from disclosing to the world the infirmities of their patients." The State has a vital interest in the protection of its citizens from acts of violence. It would be unreasonable to say that a physician must report his treatment of a gunshot wound to a peace officer, but that the State cannot call him to testify as to the nature, location and extent of such wounds in a court of law.

In the case at bar, there was nothing in the doctor's testimony which would subject Mrs. Wimberley to prosecution, damage her reputation, wound her feelings, or disclose to the public any infirmity or condition which she might legitimately wish kept private. Within the limits indicated, the testimony was admissible.

Appellant next argues that the testimony of the operator of the telephone exchange at Wickes concerning a telephone conversation was incompetent, as being a "violation of privacy" and for the further reason that

the defendant was not properly identified as one of the parties engaged in the conversation. The telephone operator testified that in the early morning of November 9, 1949 (the shooting occurred about four or five o'clock a. m. that day) someone who gave his name as Wimberley placed a call from Hill's Cafe in Wickes to "Jimmie" at Mena; that the parties "seemed to be quarreling". The proof showed that Dorothy Dugan Wimberley was known as "Jimmie". A companion of appellant testified that sometime after midnight of November 8-9, he was with appellant at Hill's Cafe in Wickes where he used the telephone.

It is true that the telephone operator could not identify the voices. "But recognition of the voice of the other party on the wire, or other parties, if the witness was 'listening in', is not the only means of identification, as it also may be made by facts or circumstantial evidence. Where a witness called a party's telephone number, and some one responded purporting to be the party called, the conversation was competent, even though witness did not know the voice." Underhill's Criminal Evidence (1935 Ed.) § 129, page 178. There was sufficient circumstantial evidence identifying the parties to the telephone conversation to permit this testimony to go to the jury.

No authority has been cited by appellant to support his contention that the telephone conversation was privileged. In *Hall* v. *State,* 208 Ala. 199, 94 So. 59, it was held that such a conversation was not privileged and that the telephone operator could testify as to a conversation between the accused and his victim.

The objections to the prosecuting attorney's closing argument have given us more concern. In referring to the defendant the prosecuting attorney said that "every time he gets in trouble his poor old mother comes up here and pays his fine." The defendant had not testified in his own behalf and there was nothing in the record to show that he had previously been convicted of other offenses. The defendant objected to this argument as being prejudicial and asked for a mistrial. The court

then admonished the jury that counsel's argument must be based on the record. "The court wants to admonish you not to consider anything unless it is based upon the testimony of the record." The defendant renewed his objection, again asking for a mistrial. He duly saved his exception to the overruling of the objection.

The prosecuting attorney then proceeded to tell the jury "I have been criticized because Shine Wimberley walks the streets of Mena today." When this was objected to, the court admonished the jury: "That is not competent argument and the jury will please consider only the testimony in the trial of this case."

The last remark alone would not have been sufficient to require a reversal of this case, since the court did instruct the jury that it was improper and in effect told them to disregard it. On the other hand, the statement of the prosecuting attorney that the defendant's poor old mother paid his fine every time he had been in trouble before was highly improper and prejudicial. The natural inference was that the defendant was an habitual offender (which was not shown by the record) and such an argument was bound to influence the jury. The court's mild admonition to the jury to consider only argument based on testimony in the record was insufficient to remove the prejudice. *Hughes* v. *State,* 154 Ark. 621, 243 S. W. 70; *Hays* v. *State,* 169 Ark. 1173, 278 S. W. 15; *Sanders* v. *State,* 175 Ark. 61, 296 S. W. 70. A commendable enthusiasm by the prosecuting attorney to bring an accused criminal to justice must stop short of clearly improper and prejudicial argument.

The judgment is reversed and the cause remanded for a new trial.