BAXTER *v.* STATE.

4800-6                                        281 S. W. 2d 931

Opinion delivered June 20, 1955.

[Rehearing denied October 3, 1955.]

240

*Virgil Roach Moncrief* and *John W. Moncrief,* for appellant.

*Tom Gentry,* Attorney General and *Thorp Thomas,* Assistant Atty. General, for appellee.

ROBINSON, J. Appellant Walter Baxter was convicted of murder in the first degree and sentenced to death for the killing of Bert O. Burbanks, town marshal and police chief of DeWitt. Baxter roomed at the home of Mrs. Sally Bittner. On the day of the homicide, he had some trouble with his landlady resulting in a neighbor reporting the disturbance to the police. In response to this call, Burbanks went to the Bittner home and while at the front door he was shot and killed by Baxter.

Baxter claims that he had been persecuted by Burbanks; that Burbanks had stopped him on numerous occasions without just cause and searched him, apparently looking for illegal liquor. Appellant contends that at the time of the killing the officer was attempting to arrest him illegally; that Burbanks, while trying to make the arrest, reached for his gun; and that he (Baxter) fired the fatal shot in self-defense. On the other hand, the evidence is sufficient to sustain the verdict.

On appeal, there are numerous assignments of error. It is contended that there was error in qualifying the jury on the death penalty, but this was done in accordance with the statute. Ark. Stats., § 43-1920. Furthermore, if the court erred in excusing any particular juror, that would not be ground for reversal. *Turner* v. *State*, 224 Ark. 505, 275 S. W. 2d 24. Appellant also says the court erred in failing to keep the jury together, but this was a matter within the discretion of the court. Ark. Stats., § 43-2121. Appellant further contends that the court erred in permitting the Deputy Prosecuting Attorney to read the indictment to the jury, but this procedure is authorized by Ark. Stats., § 43-2110.

It is insisted that the court erred in failing to give defendant's instruction No. 6 as follows: "If the deceased was about to arrest or attempting to arrest the defendant for this misdemeanor not committed in his presence and without a warrant and if this defendant resisted such an arrest and, in so doing, took the life of the deceased, then this defendant is not guilty of murder in either the first or second degree. In such case, the defendant could not be guilty of any crime greater than manslaughter." This instruction is not a correct statement of the law, and was properly refused. According to this instruction, it would be possible for any person, with malice aforethought and after premeditation and deliberation, to kill an officer attempting to arrest him, for a misdemeanor not committed in the presence of the officer, and still not be guilty of any crime greater than manslaughter. In a situation of this kind, the law in this State is clearly announced in *Coats* v. *State*, 101 Ark. 51, 141 S. W. 197, where this court said:

"An illegal arrest is no more than a trespass to the person. 'The attempt to take away one's liberty is not such an aggression as may be resisted with death. Nothing short of an endeavor to destroy life will justify the taking of life.' 1 Bishop's New Criminal Law, § 868; *Creighton* v. *Commonwealth*, 84 Ky. 103; 4 Am. St. Rep. 193; 25 Am. & Ency. of Law, p. 278 and cases cited;

Wharton on the Law of Homicide (3 ed.), § 407; *Robertson* v. *State* (Fla.), 52 L. R. A. 751.

"Mr. Bishop says that the reason why a man may not oppose an attempt on his liberty by the same extreme measure permissible in an attempt on his life may be because liberty can be secured by a resort to the law.

"So it appears that, even in a case where the defendant kills an officer in resisting an illegal arrest, he can only oppose force with force as in other cases where he is assaulted; and if the circumstances of the killing show that he acted with malice and premeditation, he is guilty of murder in the first degree. In short, he is placed in no better position than is any other person assaulted, and can only kill his assailant when the danger appears to him as a reasonable person so urgent and pressing that he is in danger of losing his own life or receiving great bodily injury."

The court said in *Edgin* v. *Talley,* 169 Ark. 662, 276 S. W. 591, 42 A. L. R. 1194: "Although he might have believed that he was being illegally arrested, it was his duty to have submitted to the officers."

After the introduction of the evidence was completed, the defendant requested that the jury inspect the scene of the alleged crime. Thereupon, the court said: "Gentlemen of the jury, it has been requested that you visit the scene of this alleged killing. The officers will go with you. They will point out where Mr. Burbanks fell. They are not to discuss this case with you. If they know, they will point out the room where this alleged shot came from. You can view this room. Don't discuss the case with the officers or anyone else. After you have viewed the premises you will report back to this courtroom."

Ark. Stats., § 43-2119, is as follows: "When, in the opinion of the court, it is necessary that the jury should view the place in which the offense is charged to have been committed, or in which any other material fact occurred, it may order the jury to be conducted in a body,

in the custody of proper officers, to the place, which must be shown to them by the judge, or a person appointed by the court for that purpose." Section 43-2120 provides: "The officer[s] must be sworn to suffer no person to speak or communicate with the jury on any subject connected with the trial, nor do so themselves, except the mere showing of the place to be viewed, and return them into court without unnecessary delay, or at a specified time."

Ark. Stats., § 43-2120, was not complied with, and the officers conducting the jury to the scene of the alleged crime were not sworn in accordance with the statute. The defendant made no request that the officers be sworn as the statute provides.

Was there error in the failure to comply with the statute and, if so, was it such an error as could not be waived by the defendant? In *Whitley* v. *State*, 114 Ark. 243, 169 S. W. 952, the officers conducting the jury to the place of the alleged crime were not sworn in accordance with the statute. It was held, however, that a previous oath administered to the officers in charge of the jury sufficed. The court said:

"The sheriff and his deputy had been specially sworn in relation to their duties of keeping the jury together during the progress of the trial, and had been instructed not to allow the jurors to communicate among themselves, and they had been specially instructed not to communicate with the jury themselves, nor to allow anyone else to do so. . . . True, no specific oath was administered to the sheriff or his deputy on the particular occasion of sending the jury to make a view, but the record shows that the sheriff had the jury in charge the night before 'under proper oath and instructions as to the guarding of the jury,' and that the court 'instructed the officers that they were under the same oath and instructions about guarding the jury as they were the night before, and not to permit any discussion of the case while they were viewing the scene of the killing, or while they were absent from the court room.' "

But, in the case at bar, the defendant's motion that the jury be kept together in charge of an officer was denied. Hence, the jury had been permitted to separate and were not under the charge of an officer. The record does not show what officers were assigned the duty of conducting the jury to the scene of the alleged crime, nor does the record show that any kind of oath was administered to the officers at any time. And there is no showing that the very things that the oath is calculated to guard against did not occur.

In *Atterberry* v. *State,* 56 Ark. 515, 20 S. W. 411, the defendant was convicted of grand larceny, and it was held that by his failure to call the court's attention to the necessity of administering the oath to the officers in charge of the jury during its deliberation, the defendant had waived the oath required by statute. But, in *Johnson* v. *State,* 68 Ark. 401, 59 S. W. 34, on the question of admonishing the jury when they were allowed to separate as provided by Ark. Stats., § 43-2122, it was held a reversible error to fail to comply with the statute.

In the Johnson case, the court emphasized the fact that the statute, now Ark. Stats., § 43-2122, provides that the jury must be admonished on being allowed to separate. Likewise, in the case at bar, § 43-2120 provides that the officers conducting the jury to the scene of the alleged crime *must* be sworn to suffer no person to speak or communicate with the jury. Also in the Johnson case, the defendant did not request the judge to admonish the jury. We think that the statement of the court in *Stroope* v. *State,* 72 Ark. 379, 80 S. W. 749, is especially applicable here:

"It is not for the court to say that no harm was done in this way. No one can foresee or foretell whether there be harm in such case, or what the harm may be, if any. We are of opinion that this was error, for which the judgment following thereon should be reversed. This may seem to be overstrictness in the application of the rule governing such matters, but it is best to avoid the very approach of an evil. To permit a breaking over of the

rule in one instance is likely to set a precedent fraught with the greatest embarrassment in future cases.''

The legislature has deemed it proper to adopt as the law of this State Ark. Stats., § 43-2120, which makes it mandatory that officers conducting a jury to the scene of an alleged crime be required to take an oath in accordance with the statute. This statute is calculated to have a salutary effect and should not be nullified by this court.

There are other assignments of error, but they are not such as are likely to occur at another trial.

Reversed.

Justices MILLWEE and GEORGE ROSE SMITH dissent.

GEORGE ROSE SMITH, J., dissenting. I am unable to agree with the majority's conclusion that this case must be reversed on account of the failure of the record to show that a special oath was taken by the officers who were in charge of the jury when the premises were viewed. In my opinion this case is controlled by *Atterberry* v. *State,* which the majority cite but do not expressly overrule.

In the *Atterberry* case, as here, there was involved the matter of administering a special oath to an officer in charge of the jury. The governing statute was § 2265 of Mansfield's Digest (now Ark. Stats. 1947, § 43-2121), which provides that the officers "must be sworn" to keep the jury together during the adjournment of the court. There, as here, there was no showing (as there was in *Whitley* v. *State,* also cited by the majority) that the officer in question had taken a similar oath earlier in the trial. There, as here, no objection was made at the time and no prejudice was shown by the record. In holding that the accused's failure to object was a waiver of the statutory requirement the court said:

"Under our system of trials in felony cases, the defendant is present in court. He is aided by counsel of his own choice, when he is able to employ them; of the court's appointment when he can employ none. His attitude is widely different from that of the defendant in the courts

of England a century ago. The court still owes him an absolutely fair and impartial trial—the right to make proof of everything he offers in denial, mitigation or excuse of the act charged, and to have it fairly passed upon by a jury; but he owes to the court fair dealing as well as candor, and should not be permitted to undo its work on account of omissions which he deemed too trivial at the time to bring to its attention, and which are not shown or charged to have affected the fairness of the trial or prejudiced his rights. . . . [We] hold that it is too late, after verdict, to object, for the first time, that a jury retired from court in charge of an officer to whom the special oath had not been administered, where it appeared that the defendant was present when it retired and neither asked that the special oath be administered to him nor objected to his taking charge of the jury, and it does not appear that either the officer or the jury was guilty of any misconduct. It appears from the record in this case that the jury retired in charge of an officer acting under the general oath of his office, and that the defendant and his attorney were present; but it does not appear that he asked the court to administer the special oath or objected to the officer taking charge of the jury.

"He conceded to the jury, thus attended, the right to determine the cause, if it gave him his liberty; and should not be permitted to question such right, merely because it took an unfavorable view of his case."

I am unable to distinguish the *Atterberry* case from this one. On the other hand, the case of *Johnson* v. *State,* relied upon by the majority, is readily distinguishable. There the trial court permitted the jury to separate without admonition, so that each individual juror became the possible subject of improper influence. There was not, as here, the safeguard resulting from the jury remaining together as a body while the premises of this crime were being viewed. The court held in the *Johnson* case that the court's failure to admonish the jury, although not objected to, was reversible error. But here the jurors were admonished by the court when sent to the scene of the murder; so the defect present in the *Johnson* case is

absent. The only irregularity asserted is the court's failure to have the special oath administered to the officers in charge, which is the very point considered in the *Atterberry* case. I must therefore dissent from the reversal of this judgment.

MILLWEE, J., joins in this dissent.