BAXTER *v.* STATE.

4860                                                                    298 S. W. 2d 47

Opinion delivered January 21, 1957.

[Rehearing denied February 25, 1957]

216

*Joe P. Melton, Peyton D. Moncrief, Virgil Roach Moncrief* and *John W. Moncrief,* for appellant.

*Tom Gentry,* Attorney General; *Ben J. Harrison,* Assistant Attorney General, for appellee.

CARLETON HARRIS, Chief Justice. Appellant, Walter Baxter, was convicted of murder in the first degree, and the jury fixed his punishment at life imprisonment.[1] Evidence showed that appellant had trouble with his landlady, Sallie Bitner, and that she left the house and requested neighbors to call the officers. The call was answered by Bert O. Burbanks, town marshal and police chief of DeWitt. Burbanks was shot and killed in front of the door of the Bitner home (where appellant roomed) from a shotgun blast fired (admittedly by appellant) from inside the house and through the screen. The evidence is conflicting as to whether or not the officer was reaching to open the door or was just knocking for admittance. Appellant claims that he had been repeatedly persecuted by this officer; that on many occasions he had been stopped by Burbanks in Dewitt, and had his person searched, as well as his truck, ostensibly for illegal liquor. Baxter states that though Burbanks never found any liquor, and had no just cause for such search, he was told by the marshall in effect that he would be searched "everytime he saw him." He further contends that at the time of the killing Burbanks was attempting to arrest him illegally, was reaching for his gun, and that he (appellant) fired in self-defense. There

---

[1] This case here on its first appeal is found in 225 Ark. 239, 281 S. W. 2d 931.

is, however, more than ample evidence to sustain the verdict.

Appellant, in seeking a reversal, sets up numerous assignments of error. Among instructions requested was one to the effect that there was no evidence that Baxter had committed a felony or that the deceased had any reasonable cause to believe that Baxter had committed a felony. Requested instruction No. 6 was to the effect that appellant had not committed a misdemeanor in the presence of the deceased, and a further requested instruction was to the effect there was not sufficient evidence to show deceased had the right to arrest appellant. We think such requested instructions argumentative, and properly refused. *Burns* v. *State,* 155 Ark. 1, 243 S. W. 963. The neighbor who called Burbanks testified that she did not report to him as to who was causing the trouble, and the state's theory is that the officer was only making an investigation of the reported disturbance. At any rate, the court properly instructed the jury as to lawful and unlawful arrests, and we think appellant's theory of the case was adequately presented by such instructions.

Various assignments of error deal with the refusal of the court to give defendant's instruction No. 14 which was as follows:

"Members of the jury may have read newspaper reports during the trial of this case and if any of you have read any such reports, you must disregard any such reports entirely. No jury has any right and it would be wrong for a jury to base its verdict upon newspaper reports, or to allow newspaper reports to influence or affect their verdict in the slightest extent.

"And in this connection the jury is further charged that it must not take into consideration, even to the slightest degree, the result of any former trial of this case. The action taken or result of any former trial must not be considered by this jury and this jury's verdict should be the verdict of this jury and this jury only."

a. In the first place, it would appear that the content of this instruction was a proper subject matter for *voir dire*. In fact, several of the veniremen were questioned as to whether or not they would be influenced by newspaper accounts which they had read. Counsel for appellant, had he so desired, might well have interrogated them as to any possible effect the reading of future newspaper accounts might have upon their deliberations. Likewise, he could have examined them as to any possible prejudice that might exist because of knowledge of appellant's previous conviction for the same offense. Appellant was not required to take any particular juror. He did not exhaust his challenges. Apparently he was satisfied that each juror selected would be able to give him an impartial trial.

b. The requested instruction is cautionary only, and it has been held that the giving or refusing of such instruction lies within the sound discretion of the court. *Rayburn* v. *State*, 69 Ark. 177, 63 S. W. 356; *Strabel* v. *State*, 192 Wisc. 452, 211 N. W. 773. Actually, the Court did admonish the jury during the trial.[2]

Assignments of error 19 and 20 deal with the Court's action in refusing to allow appellant to ask certain questions of the witness, Sallie Bitner, on cross examination, relative to her past morals and conduct. It is sufficient to state that the court subsequently ruled that these questions might be asked; however, appellant declined to do so.

Another assignment dealt with a question asked by the prosecuting attorney of Baxter during cross examination, it being the contention of appellant that this question informed the jury that appellant had received the death sentence in a previous trial.

---

[2] During the examination of one of the witnesses, there was a verbal exchange between the prosecuting attorney and appellant's counsel relative to an affidavit which had been filed after the first trial (in support of motion for a new trial). The court remarked, "Lady and Gentlemen of the jury, you are instructed to try this case on the testimony you hear on the witness stand today and the testimony you hear in the entire case." * * *

Q. "Do you think the death house down at the penitentiary is as dark as the grave?" Appellant objected, and the court instructed the prosecuting attorney not to ask that question, e. g., the objection was sustained. Appellant then moved for a mistrial, and the court cautioned the jury that they must not consider the question. No further objections or exceptions were made, nor was request made for ruling on the motion, and the admonition was apparently treated as sufficient.[3]

A number of the assignments of error deal with the remarks of the court at various intervals during the trial of the cause. We have carefully examined each of these and are of the opinion that no prejudice resulted to the appellant thereby.

Assignment No. 25 relates to the refusal of the court to permit appellant to ask the following question of witness Bradberry, (deputy marshal), in attempting to show that deceased was of a violent and reckless nature. Q. "Now, while he (deceased) was marshal there, I believe you stated you know of some three or four cars he had shot into."[4] The ruling of the court in holding the question improper was correct, as it is well settled that it is not proper to go into specific instances of misconduct, and deceased's disposition could only have been shown by testimony relating to his general reputation. *Burton* v. *State,* 204 Ark. 548, 163 S. W. 2d 160, *Shuffield* v. *State,* 120 Ark. 458, 179 S. W. 650.

It is next contended that the court erred in ordering a special panel for the trial of this cause. The undisputed facts are as follows: The court discovered that the jury commissioners had not signed their certificate as to the regular list of jurors selected for the February

---

[3] Actually, the subject was presented by appellant himself in answer to the first question propounded by his own counsel after stating his name.

Q. "Walter, I want to ask you this question whether or not you are having any trouble with your eyes?"

A. "Yes, sir, since I have been in the death house over there so long my eyes are awful weak."

[4] This referred to alleged actions in another state.

term, 1956, (as required by Ark. Stats. 1947, § 39-208).[5] A special panel was then ordered, but within a few days it was discovered that the court had failed to swear in the clerk and deputy as required by § 39-209. The court accordingly required the jury commissioners to return and select a second list of special jurors. On this occasion the proper oath was administered to the commissioners and they then proceeded to select qualified jurors from the different localities of Lonoke county (where the case was being tried on a change of venue). The clerk and deputy were sworn as the law requires. The court did not quash either the first or second list, but refused to use them because the Statute was not complied with as set out above. It is sufficient to state that the record does not show an objection by appellant at any time in regard to these proceedings, which we hold renders this assignment meritless. *Johnson* v. *State,* 127 Ark. 516, 192 S. W. 895.

This court, of course, can only proceed on the record, unless it be shown in proper legal manner that said record is incorrect.

As stated at the outset, numerous other assignments of error are set out. No point would be served in listing these separately. We have examined the rulings of the court throughout the trial and find no error. The jury was properly instructed as to the law, and defendant had a fair trial.

Finding no reversible error, the cause is affirmed.

---

[5] An order was entered on March 28, 1956, finding that said jury commissioners were summonsed back before the court to correct the error, and after being administered the oath required by law, each commissioner, on being examined by the court, stated that it was an omission on their part in failing to certify said jury lists. Each commissioner stated he had examined the list of jurors selected by them, and that the names contained therein were the names and persons they selected to serve at the regular February term, 1956, and they, on the above date, did certify to said list in open court as being correct.