527

Wayne BRIDGES and Lamar HUGHES *v.*
STATE of Arkansas

CR 74-89                                519 S.W. 2d 756

Opinion delivered January 27, 1975
[Rehearing denied March 3, 1975.]

*Jeptha A. Evans,* for Bridges; *William G. Wright,* for
Hughes, appellants.

*Jim Guy Tucker,* Atty. Gen., by: *O. H. Hargraves,* Dep. At-
ty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. Wayne Bridges, Lamar Hughes, and Mike Hurst were jointly tried upon a charge of embezzlement, were found guilty, and were each sentenced by the jury to imprisonment for three years. Bridges and Hughes have appealed, arguing several points for reversal. Their most serious contention is that the State's testimony, even if accepted as true, established the offense of larceny rather than that of embezzlement. This contention must be sustained.

The offense occurred at the Rock Tavern, in the city of Paris, at about closing time on the night of March 8, 1973. Charlotte Kuykendall, an employee, was in charge of the tavern. Four customers were present: The appellants Bridges and Hughes, both age 23, their codefendant Hurst, and Sue Sims.

The proof tends to show that Charlotte asked the other four to co-operate with her in faking a robbery, in return for her promise to provide them with at least a case of free beer. The others agreed. One of the five, probably Bridges, took some $300 from the cash register and hid it outside the building. Charlotte then called the police and reported the alleged robbery.

The police arrived and evidently became suspicious, for they took all five participants to headquarters for questioning. Both appellants at first gave written statements describing an armed robbery committed by two men who came in the tavern after closing time. Both soon retracted their statements, Bridges admitting orally that the robbery had been faked and Hughes making a similar written admission. The missing money was quickly found.

The charge of embezzlement was based upon Ark. Stat. Ann. § 41-3927 (Repl. 1964), reading in part as follows:

> If any clerk, apprentice, servant, employee, agent or attorney of any private person . . . shall embezzle or convert to his own use . . . without the consent of his master or employer, any money . . . belonging to any other person, which shall have come to his possession, or

under his care or custody, by virtue of such employment, . . . he shall be deemed guilty of larceny, and on conviction, shall be punished as in case of larceny.

The statute has been in force since 1838 and has been construed in many cases. In *Atterberry v. State,* 56 Ark. 515, 20 S.W. 411 (1892), an employee of a store had taken articles of clothing that were kept for sale. We held the offense to be larceny, saying that the articles "were legally in the possession of the owner, even if for a time left in the custody of the salesman; and an appropriation of them by the latter was a trespass on the possession of the former, within the meaning of the law defining larceny." That holding was reaffirmed recently in *Edwards* v. *State,* 244 Ark. 1145, 429 S.W. 2d 92 (1968), where we held that a clerk in charge of a bus station, who took money from a drawer, was properly chargeable with larceny, as he merely had custody of his employer's property.

In *Fleener v. State,* 58 Ark. 98, 23 S.W. 1 (1893), we held that the statutory reference to property "belonging to any other person" means any person other than the employee rather than any person other than the employer. We went on to say:

> This is not in conflict with *Powell* v. *State,* 34 Ark. 693, which was an indictment against a general household servant, who, having the custody of some tools under the superior possession of the master, appropriated the tools to his own use. This was held to be larceny, and not embezzlement, and the decision is in accord with the weight of authorities. The same authorities hold that when the servant comes into possession of the property before the master, and his possession is by reason of his relation as such servant, and he appropriates it to his own use before it comes into the possession of the master, and while yet in his possession, the fraudulent appropriation thus made is embezzlement, and not larceny. See note 98 Am. Dec. 126-129.

The rule of construction in New York, Missouri

and Minnesota, and perhaps other States, is considered necessary in order that there be not a hiatus in the law, as there would otherwise seem to be.

The crime of embezzlement is purely statutory and is separate and distinct from larceny. *Compton* v. *State,* 102 Ark. 213, 143 S.W. 897 (1911). In *Hall* v. *State,* 161 Ark. 453, 257 S.W. 61 (1923), we sustained the State's right to allege separate counts of larceny and embezzlement arising from the same transaction, where it might be doubtful which would be established by the proof. In that connection we said:

> Larceny and embezzlement belong to the same family of crimes. If the actual or constructive possession of the property was in the owner, then the wrongful conversion would be larceny, and not embezzlement. There must be lawful possession in the defendant at the time of the conversion to constitute embezzlement. The distinguishing feature of embezzlement is that the taking essential to larceny is not required, a breach of trust taking its place.

In the case at bar the possession of the property, as in *Atterberry* and *Edwards,* seems to have been that of the owner, the employee having mere custody. Consequently the State's proof established larceny, rather than embezzlement as charged in the information. The Attorney General is mistaken in arguing that the appellants waived the point now at issue by not objecting to the information. The information was not fatally defective; it simply charged the wrong offense, in the light of the subsequent proof. The defendants were under no duty to alert the prosecution to that possibility.

On the other hand, we cannot sustain the contention, argued by Hughes, that the evidence is insufficient because (a) Hughes had no position of trust with regard to the money and (b) Charlotte Kuykendall did not physically take the money from the cash register. If, as the State's proof tended to show, all five of those present, in return for a promised reward, abetted Charlotte by agreeing to conceal the truth, they were guilty as principals under Ark. Stat. Ann. § 41-118.

Hughes also argues that the trial court erred in refusing to grant his repeated requests for a separate trial. The original pretrial motion for a severance was properly denied, as no basis for the motion was then shown. During the trial, however, it developed that Hughes's counsel was handicapped in his cross-examination of the officers, because the court refused to allow the jury to consider in Hughes's defense certain admissions by the other participants that were detrimental to Bridges. Problems also arose concerning cross-implicating confessions. *Grooms* v. *State*, 251 Ark. 374, 472 S.W. 2d 724 (1971); *Mosby and Williams* v. *State*, 246 Ark. 963, 440 S.W. 2d 230 (1969). In view of those circumstances a severance should be granted if the cases are retried.

We need not discuss the appellants' other contentions, for they involve matters not apt to arise upon retrial.

Reversed and remanded for further proceedings.

JONES, J., dissents.

J. FRED JONES, Justice, dissenting. I do not agree with the majority opinion in this case and I would affirm.

When *Fleener* v. *State*, 58 Ark. 98, 23 S.W. 1, was decided in 1893, the statute was subject to strict construction then as it is now. In *Fleener* we held that the statutory reference to property "belonging to any other person" means any person other than employee rather than any person other than employer. The decision in *Fleener* was predicated upon the logical reasoning reflected in *Powell* v. *State*, 34 Ark. 693, and it is my opinion the reasoning in *Powell* is still sound. The *Powell* decision was based on the weight of authority holding that:

"[W]hen the servant comes into possession of the property before the master, and his possession is by reason of his relation as such servant, and he appropriates it to his own use before it comes into the possession of the master, and while yet in his possession, the fraudulent appropriation thus made is embezzlement, and not larceny."

The majority apparently rely on our decision in *Atterberry v. State*, 56 Ark. 515, 20 S.W. 411, where in *sustaining* a conviction for larceny of goods by a clerk in a store who had authority to sell them, we said:

> "They [the goods] were legally in the possession of the owner, even if for a time left in the custody of the salesman, and an appropriation of them by the latter was a trespass on the possession of the former, within the meaning of the law defining larceny."

In *Atterberry* the defendant was *charged* with larceny. This court in *Atterberry* pointed out:

> "The articles taken were kept for sale by their owner in a store in which E. C. McBel had authority to be present and sell the goods. They were legally in the possession of the owner, even if for a time left in the custody of the salesman. . . ."

The appellants in *Atterberry* objected to an instruction given by the trial court pertaining to the appellants as accessories to larceny and in refusing to charge the jury that:

> "In larceny the larceny is complete the moment the goods are taken in possession by the person stealing same; and that if, after that, one receives the goods knowing them to have been stolen, this, of itself, could not constitute the crime of larceny on the part of one so receiving them."

The question before this court in *Atterberry* was stated as follows:

> "The appellant alleges as a ground for reversal that the verdict is not supported by the evidence. In determining it we are called to decide whether the evidence warranted a finding that he was guilty of any offense, and if so, whether it was larceny, or some other crime, as embezzlement or receiving stolen property."

The above statement by the court is the only place in *Atterberry* where the word embezzlement appears.

Assuming that the appellants in *Atterberry* argued that the evidence was directed to the crime of embezzlement rather than to larceny, the crime charged; the appellants in *Atterberry* would have been contending the reverse of what the appellants contend in the case at bar. In the case at bar the appellants contend, and the majority so hold, that the crime charged was embezzlement and that the crime proved was larceny. In *Atterberry* we affirmed the judgment and in the case at bar the majority have reversed.

In the case at bar the employee or servant was not one who merely "had authority to be present and sell goods." While the servant in the case at bar did have authority to be present and sell beer, she had the more responsible and apparently the exclusive authority over the cash register and possession and control of its contents. She ran the place for her employer. It was not the beer that was stolen from the premises in this case; it was the cash from the cash register that was embezzled. In *Atterberry* this court did not say a conviction for embezzlement would not have been sustained under the evidence in that case if the indictment had charged embezzlement rather than larceny. Certainly we did not say that the judgment would have been reversed had embezzlement been charged and the conviction was based thereon.

In the case at bar I do not contend the judgment should have been reversed if larceny had been charged and the appellants had been convicted for larceny. It is simply my contention that the judgment in this case should not be reversed and the state put to the expense of another trial under the pleadings and evidence in this case. In other words, I would affirm the judgment under the charge of embezzlement on the evidence of record in this case. I do not say I would not have affirmed a conviction for larceny under the evidence in this case had the appellants been charged with the crime of larceny.

I would affirm.