No. 55,643

FRANK T. CARPENTER, JR., and ILA B. CARPENTER, *Appellees and Cross-Appellants,* v. RICHARD C. RILEY, *Appellant and Cross-Appellee.*

(675 P.2d 900)

Opinion filed January 13, 1984.

*Michael D. Pepoon,* of the Law Office of Lynn E. Martin, of Paola, argued the cause, and *Lynn E. Martin,* of the same firm, was with him on the briefs for the appellant and cross-appellee.

*Carl W. Hartley,* of Rinehart, Bright, Hartley & Casteel, of Paola, argued the cause and was on the brief for the appellees and cross-appellants.

The opinion of the court was delivered by

LOCKETT, J.: Richard Riley, defendant, appeals from the trial court's judgment after trial granting foreclosure of a real estate mortgage for the plaintiffs, Frank and Ila Carpenter. The plaintiffs have filed a cross-appeal on the trial court's failure to grant them judgment on the pleadings.

Riley purchased pasture land located in Miami County from

the Carpenters on July 25, 1977. The purchase price was $151,200.00, to be paid in 25 annual installments of $14,164.42 due each August 1, commencing in 1978. A promissory note and a mortgage were executed by the parties. The promissory note provided:

"In the event of default in the payment of interest or installment of principal due hereunder and such default remains uncured for a period of ten (10) days, the holder hereof may, at their option, without notice or demand, declare this note immediately due and payable.

"This note is secured by and subject to the terms and conditions of a certain real estate mortgage executed concurrently herewith by maker hereof covering the following described real estate situated in Miami County, Kansas, to-wit . . . ."

The accompanying mortgage provided:

"But if default be made in such payment, or any part thereof, or interest thereon, or the taxes, or if the insurance is not kept up thereon, then this conveyance shall become absolute, and the whole shall become due and payable, and it shall be lawful for the said part ies of the second part or the survivor of them execu-tors, administrators and assigns, at any time thereafter, to sell the premises hereby granted or any part thereof, in the manner prescribed by law, appraise-ment hereby waived or not, at the option of the parties of the second part, or the survivor of them executors, administrators or assigns; and out of all the moneys arising from such sale, to retain the amount then due for principal and interest, together with the costs and charges of making such sale, and the overplus, if any there be, shall be paid by the part ies making such sale, on demand, to the said part y of the first part his heirs or assigns."

Riley paid the first installment on the note and taxes for the year 1978. The annual installments on the note for 1979 and 1980 were paid to the Carpenters by Riley. The 1979 and 1980 real estate taxes on the realty purchased were not paid by Riley. On February 19, 1981, Riley, who now lived in Brazil, wrote a letter to the Miami County Treasurer stating it had been some time since he had received a tax statement on his property. He requested the county treasurer to inform him of the status of the taxes due on the land. Frank Carpenter paid the 1979 and 1980 taxes totaling $844.35 on August 5, 1981.

On August 5, 1981, the Carpenters filed an action against Riley. The Carpenters claimed Riley's failure to pay the real estate taxes for the years 1979 and 1980 was a default, triggering the acceleration clause of the promissory note, making the entire amount of the note due and payable. If the balance due on the accelerated note was not paid, the Carpenters requested the

mortgage be foreclosed. At this point Riley still had until August 10 to make his 1981 payment on the installment and taxes. The Carpenters did not allege in their petition that Riley was in default for nonpayment of the 1981 installment on the note and taxes.

On August 7, 1981, Riley deposited two checks with the Clerk of the Miami County District Court. Both checks were made payable to the Carpenters. One check was payment for the delinquent 1979 and 1980 real estate taxes. The second check was the 1981 note installment. The court returned the checks to Riley stating: "As we are not the payee of this check, we cannot accept the same." Riley then deposited two checks for the same amounts with the clerk on August 10, 1981. This time the checks were made payable to the clerk. Riley's attorney mailed a letter to the plaintiffs' attorney on August 10. This statement appeared in the letter:

"If your client is willing to accept these payments and continue with the contract, we will be willing to continue the payments as provided by the contract and mortgage."

The Carpenters did not respond to the letter.

The Carpenters moved for judgment on the pleadings pursuant to K.S.A. 60-212(c) on November 6, 1981. On November 19, 1981, Riley moved to have his check for the real estate taxes returned by the clerk. The Carpenters filed an amended petition in the action on January 5, 1982. Count I was almost identical to the claim contained in the original petition. Count II sought reformation of the promissory note and mortgage. Count III claimed that the instruments involved were ambiguous and the court should examine the facts and circumstances surrounding the execution of the instruments, determine the intention of the parties and give effect to that intention.

On January 6, 1982, the court denied the Carpenters' motion for judgment on the pleadings on the basis of the case of *Noble v. Greer*, 48 Kan. 41, 28 Pac. 1004 (1892). The court granted Riley's November 19 motion to have his tax check returned.

Riley filed a motion on January 12, 1982, requesting that his installment check be returned because the Carpenters had refused his proffered tender. On January 22, 1982, the court permitted the Carpenters to amend their petition and permitted the return of Riley's installment check.

On September 22, 1982, the Carpenters filed a fourth count to their amended petition. In Count IV, the Carpenters alleged Riley had failed to pay the August 1, 1982, installment payment and taxes, thereby defaulting on the promissory note.

A trial on the merits was conducted on September 24, 1982. The trial court issued its findings of fact and conclusions of law on December 8, 1982. The court found the 1981 payment of principal, interest and taxes into the court was not a tender but rather an offer for settlement. The court concluded Riley was in default for failure to pay the 1982 installment and taxes when due. The court determined there was no legal excuse why the 1982 payment of principal, interest and taxes should not have been paid and the Carpenters were entitled to judgment on Count IV of their petition in the amount of $156,043.91 on the note, plus $844.35 for the real estate taxes, and appropriate interest thereon. The court ordered a sheriff's sale was to be held if the judgment was not paid. Riley's motion to modify was denied. This appeal and cross-appeal followed. Subsequently the Carpenters have purchased the realty at a sheriff's sale, Riley's six-month redemption period has expired, and the Carpenters have been issued a sheriff's deed for the property.

Riley does not dispute nonpayment of the 1982 installment payment and taxes, but seeks to excuse his failure to pay. He contends that tender of the 1982 installment and payment of the 1982 taxes was not necessary; that the Carpenters' refusal to accept Riley's tender of the 1981 installment payment and taxes paid into the court, after the Carpenters filed suit, made further payments under the note and mortgage by Riley unnecessary. We agree.

Tender is an unconditional offer to perform a condition or obligation. The party making tender must have the ability for immediate performance. The tender must be absolute and unconditional to be effectual. *Anderson v. Oil Co.*, 106 Kan. 483, 186 Pac. 198 (1920). Riley's tender of payment into court was an effort to perform as far as he was able after his default in the payment of the 1979 and 1980 taxes. The purpose of the tender by Riley was to obtain an unconditional acceptance by the Carpenters of past due payments of the 1979 and 1980 taxes and the 1981 installment payment, and obtain a waiver of the Carpenters' right to exercise the option of acceleration under the note and mortgage.

Having received Riley's tender to reimburse for the payments of the 1979 and 1980 taxes and payment of the 1981 installment payment, the Carpenters were entitled to a reasonable time to accept or reject the tender by Riley. The Carpenters rejected the offer of tender by Riley by not accepting within a reasonable time the money tendered into court and dismissing the action to foreclose the note and mortgage.

After the Carpenters' refusal to accept Riley's tender in 1981, Riley was no longer required to tender future installment payments into court. The affirmative exercise by the Carpenters of their option to declare the mortgage due on a breach of a condition brought the mortgage to maturity not merely for the purpose of foreclosure, but for all purposes, as effectively as if maturity had resulted. Riley tendered the 1979 and 1980 taxes into court to satisfy the overdue payment. The Carpenters' refusal to accept tender relieved Riley from payment of any obligation that would accrue under the note and mortgage until the matter was determined by the court. Tender of future payments was waived by the Carpenters' declaration to refuse tender and repudiate the contract. The Carpenters had declared they would not accept tender by Riley; thereby the Carpenters accelerated the amount due under the note or in the alternative return of the mortgaged property to them. Further tender would serve no purpose as far as the Carpenters were concerned; tender by Riley would be a mere formality. Equity does not insist on purposeless conduct and disregards mere formality. Consequently all that was required was that Riley place himself in favor with the court by the original tender. *Niquette v. Green,* 81 Kan. 569, 106 Pac. 270 (1910). A tender or demand otherwise indispensable is no longer required when its futility is shown. *Gardner v. Spurlock,* 184 Kan. 765, 339 P.2d 65 (1959).

Riley claims that the Carpenters' initial action to foreclose based upon a mortgagor's failure to pay the real estate taxes when due was barred by *Noble v. Greer,* 48 Kan. at 43. In *Noble v. Greer,* the plaintiffs attempted to foreclose a real estate mortgage because of nonpayment of taxes. Relating to default, the mortgage read as follows:

"But if default be made in such payments, or any part thereof, or interest thereon, or the taxes, or if the insurance is not kept up thereon, then this conveyance shall be due and payable." 48 Kan. at 42.

The identical language concerning default exists in the mortgage focused on in this appeal. The court in *Noble v. Greer* disallowed foreclosure where the mortgagee's petition failed to allege a breach of the mortgage. The *Noble* court stated:

"It is true that the default provision of the mortgage declares that 'if default be made in such payments, or any part thereof, or the interest thereon, or the taxes, or if the insurance is not kept up thereon, the conveyance shall become due and payable,' and the mortgagee may sell. What taxes are referred to? Taxes on the land described in the mortgage? Probably. But there is nothing in the mortgage to show what taxes are meant." 48 Kan. at 43.

The court then went on to state that:

"We are not willing to hold a debt, otherwise not due, to have become due by reason of a provision in a mortgage relating to defaults, when the mortgage contains no provision for payment of taxes by the mortgagor, and the only provision in the mortgage relating to taxes is as indefinite and uncertain as the one involved in this case." 48 Kan. at 43.

Promissory notes and mortgages are contracts between the parties, and the rules of construction applicable to contracts apply to them. *First Nat'l Bank & Trust Co. v. Lygrisse,* 231 Kan. 595, 647 P.2d 1268 (1982). The primary rule is to obtain the intention of the parties. A mortgage and a note secured by it are to be deemed parts of one transaction and construed together as such; the provisions of both should be given effect, if possible. The intention of the parties is to be determined from an examination of both the mortgage and note, not from one separately, and that intention must prevail. Provisions of the mortgage relating to the indebtedness itself have the same effect as if incorporated into the note, where the note contains a provision making the mortgage a part thereof. Unlike the *Noble* court, we believe the mortgage upon which the default is based, construed with the note, is not too indefinite or uncertain to authorize default and enable the mortgagee to declare the mortgage absolute, and foreclose the mortgage. We therefore overrule *Noble v. Greer,* 48 Kan. 41, 28 Pac. 1004 (1892).

Here both parties signed the note and the mortgage when Riley purchased the land from the Carpenters. The note signed by Riley referred to the mortgage executed by Riley and the Carpenters. The note stated it was secured by and subject to the terms and conditions of the real estate mortgage executed con-

currently. The note and mortgage contained an identical description of the subject real estate and both instruments were executed the same day. Riley made payments of principal and interest in 1978, 1979 and 1980, and paid the taxes due on the real estate in 1978. In February of 1981, Riley sent an inquiry to the Miami County Treasurer stating he had not received a tax statement in some time.

The general rule is that where a mortgage contains an acceleration clause relating to default of a required payment, the mortgagee is entitled because of such default to enforce the acceleration clause at once according to its terms. In *Insurance Co. v. Puckett*, 97 Kan. 428, 155 Pac. 930 (1916), the mortgage agreement entered into by the parties contained a stipulation that upon mortgagor's failure to pay principal and interest when due, or if taxes assessed against the mortgaged property was not paid when due, the whole debt became due and the mortgage became subject to foreclosure at the option of the mortgagee. The mortgagee had the right to pay the taxes due and the mortgage stood as security for the taxes so paid. A default in the payment of taxes operated to accelerate the maturity of the mortgage debt and gave the mortgagee the right to maintain foreclosure at once. The mortgagor failed to pay the real estate taxes for one year. The mortgagee paid the taxes and was allowed to foreclose the mortgage because of the mortgagor's breach of the agreement.

Here the trial court found that the real estate taxes for 1979 and 1980 were not paid by Riley when due. The Carpenters filed the lawsuit requesting foreclosure of the mortgage because of Riley's failure to pay the 1979 and 1980 taxes on the real estate as required by the note and mortgage. Had the Carpenters accepted the tender of money by Riley, such acceptance of the tender would have barred them from accelerating the amount due on the note and requesting foreclosure. Riley was in default of his contractual obligation. The Carpenters had the contractual right to compliance with the payment schedule agreed to by the parties in the note and mortgage.

Where the trial court has made such findings of fact, how does an appellate court review those findings by the court and interpret the written agreements between the parties? Justice Herd discussed the various standards of appellate review in *Sunflower*

*Electric Coop., Inc. v. Tomlinson Oil Co.,* 7 Kan. App. 2d 131, 137-38, 638 P.2d 963 (1981), *rev. denied* 231 Kan. 802 (1982):

"Where the trial court has made findings of fact and conclusions of law, the function of this court on appeal is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. [Citation omitted.] In determining whether a trial court's findings of fact are supported by the evidence, it is not the function of an appellate court to weigh conflicting evidence, pass on the credibility of witnesses or redetermine questions of fact . . . .

"[I]nsofar as determination of [the] case requires interpretation of the agreement itself, the standard of review is that regardless of the construction of a written instrument made by the trial court, on appeal the instrument may be construed and its legal effect determined by the appellate court."

See *Johnson v. Johnson,* 7 Kan. App. 2d 538, 542, 645 P.2d 911 (1982), and *Waggener v. Seever Systems, Inc.,* 233 Kan. 517, Syl. ¶ 5, 664 P.2d 813 (1983).

The trial court erred when it gave judgment to the Carpenters for Riley's failure to tender the 1982 installment into court after the Carpenters had refused the tender of the 1981 installment subsequent to the filing of the foreclosure action. The Carpenters were entitled to judgment because Riley failed to pay the real estate taxes for 1979 and 1980 as required by the note and mortgage. The trial court reached the correct result but for the wrong reason. The judgment of the trial court, if correct, is to be upheld, even though the court may have relied upon the wrong ground or assigned an erroneous reason for its decision. *Kansas Sand & Concrete, Inc. v. Lewis,* 8 Kan. App. 2d 91, 97, 650 P.2d 718 (1982), citing *Farmers State Bank v. Cooper,* 227 Kan. 547, Syl. ¶ 10, 608 P.2d 929 (1980).

The judgment of the trial court in this case was correct. Judgment is affirmed, overruling *Noble v. Greer,* 48 Kan. 41, 28 Pac. 1004 (1892).