(839 P.2d 537)

No. 67,067

MGM, INC., and JOHN MASH, *Appellees/Cross-appellants*, v. LIBERTY MUTUAL INSURANCE COMPANY, *Appellant/Cross-appellee*.

Opinion filed October 9, 1992.

*Lynn D. Preheim*, of Morrison & Hecker, of Wichita, for appellant/cross-appellee.

*James R. Schaefer*, of Wichita, for appellee/cross-appellant.

Before REES, P.J., ELLIOTT and PIERRON, JJ.

REES, J.: This is an action brought on a contract, an insurance policy issued by defendant Liberty Mutual Insurance Company. Specifically, the action has been brought on a Broad Form Comprehensive General Liability Endorsement to a Liberty Mutual Comprehensive General Liability Insurance Policy issued to MGM Foods, Inc., d/b/a Western Sizzlin' Steak House. At all material times, defendant John Mash, MGM's majority stockholder and president, acted for and on behalf of MGM. Liberty Mutual appeals from the trial court's judgment entered against it following a bench trial. By its judgment, the trial court held Liberty Mutual affords coverage to MGM and Mash for their liability to certain claimants. By cross-appeal, MGM and Mash complain the trial court erroneously refused to permit submission of evidence of damages they suffered arising out of the failure of Liberty Mutual to defend the underlying claims.

Without real question, each underlying claim here involved essentially is a claim for recovery for violation of the claimant's right of privacy, that is, for wrongful intrusion into his or her private activities. See *Johnson v. Boeing Airplane Co.*, 175 Kan. 275, 280, 262 P.2d 808 (1953).

The factual underpinning of each underlying claim is Mash's surreptitious and intentionally concealed recording of telephone conversations over the business telephone lines at MGM's restaurant. No part of the content of the recorded conversations has ever been disclosed by Mash to others.

The principal question before us is whether under its insurance policy Liberty Mutual affords coverage to MGM for the claims asserted by eight MGM employees for injury allegedly arising out of violation of their right of privacy. The trial court held that coverage exists under the policy's "advertising injury liability" coverage. That holding cannot stand.

Regardless of the construction of an insurance contract made by the trial court, on appeal the legal effect of the contract may be determined by the appellate court. *Patrons Mut. Ins. Ass'n v. Harmon,* 240 Kan. 707, 713, 732 P.2d 741 (1987). See *NEA-Goodland v. U.S.D. No. 352,* 13 Kan. App. 2d 558, 562, 775 P.2d 675, *rev. denied* 245 Kan. 785 (1989).

By the terms of the policy, Liberty has two duties. It has the duty to indemnify and the duty to defend. Those duties are set forth in the following insuring agreement language of the policy:

"II . . . .

"(A) [Liberty Mutual] will pay on behalf of [MGM] all sums which [MGM] shall become legally obligated to pay as damages because of **personal injury** or *advertising injury* to which this insurance applies, sustained by any person . . . and arising out of the conduct of [MGM's] business . . . and [Liberty Mutual] shall have the . . . duty to defend any suit against [MGM] seeking damages on account of such injury, even if any of the allegations of the suit are groundless, false or fraudulent . . . ." (Emphasis added.)

What is "advertising injury" for which the policy provides coverage? The answer is found in the policy's recited definition of the term: " 'Advertising injury' means injury arising out of an offense . . . *occurring in the course of [MGM's] advertising activities,* if such injury arises out of . . . violation of right of privacy . . . ." (Emphasis added.)

Are the claims of MGM's employees claims for "advertising injury" insured against under the policy? Are they claims of the sort and nature for which Liberty Mutual contractually bound itself to indemnify and defend? We conclude that the underlying

claims are not claims for advertising injury for which the policy affords coverage. Why? Because the events giving rise to the underlying claims did not occur "in the course of [MGM's] advertising activities."

In *Lazarra Oil Co. v. Columbia Cas. Co.*, 683 F. Supp. 777, 778-80 (M.D. Fla. 1988), this is said:

"The [insurance] contracts . . . provide that the Defendants will provide coverage for, i.e., defend and indemnify, Plaintiffs in the event of personal or advertising injury . . . which arises out of an 'occurrence.' . . . 'Advertising injury' is defined as an injury arising out of a tort committed in the course of the Plaintiff's advertising activities, if such injury arises out of . . . defamation, [or] violation of right of privacy . . . .

. . . .

". . . That the [plaintiffs in the underlying litigation] are seeking solely to recover for pure economic losses, and not for personal or advertising injury or property damage (as those terms are defined in the insurance contracts), can be seen from a careful reading of their amended complaint . . . .

. . . .

"[The insureds'] contention that an 'advertising injury' was alleged by the [plaintiffs in the underlying litigation] is . . . without merit. The insurance contracts at issue provide for coverage in the event that *[the insureds']* *advertising* causes some type of injury such as defamation. There is absolutely no allegation in the [underlying litigation] complaint that such an injury ever resulted from any advertising done by [the insureds]. Advertising done by the [plaintiffs in the underlying litigation], whether voluntary or impermissibly compelled, is of no consequence with regard to the insurance policies at issue here." (Emphasis added.)

In *Int'l Ins. Co. v. Florists' Mut. Ins. Co.*, 201 Ill. App. 3d 428, 430-33, 559 N.E.2d 7 (1990), this appears:

"The relevant provisions of the insurance policy . . . read in part as follows:
. . . .
'ADVERTISING INJURY

means . . . invasion of rights of privacy; which arise out of [the insured's] advertising activities.'

. . . .

"[Plaintiff] maintains that the injury alleged in the underlying Federal complaint triggered Florists' duty to defend because the injury, unfair competition, was causally connected to advertising activity. . . .

. . . .

". . . Florists asserts that by definition, advertising connotes marketing activity, or publication to the public. . . .

. . . .

". . . The term 'advertising' has been held to refer to the widespread distribution of promotional material to the public at large. Letters sent to advertisers from a magazine publisher disparaging another publisher's circulation guarantees are not related to advertising activities. [Citation omitted.] Neither are 400 pamphlets circulated to a company's distributors to aid them in educating the salespersons to solicit purchase orders for the company's product. [Citation omitted.] Similarly, an in-house rule prescribing conditions for processing floral arrangements that have been advertised in a particular way is not related to advertising activity such that an injury attributable to the rule can be considered an advertising injury."

See also *Fox Chemical Co., Inc. v. Great Am. Ins. Co.,* 264 N.W.2d 385, 386 (Minn. 1978), where the term "advertising" is discussed in the context of an exclusionary clause.

In *Playboy Enterprises v. St. Paul Fire & Marine Ins.,* 769 F.2d 425, 428 (7th Cir. 1985), where the subject was coverage for a libel claim against the insured and where *Fox* was followed, it is said:

"The term 'advertising' has been defined as follows: 'the action of calling something (as a commodity for sale, a service offered or desired) to the attention of the public especially by means of printed or broadcast paid announcements.' *Webster's Third New International Dictionary of the English Language Unabridged* 31 (1963). This definition requires that the presentation of the item to be sold or approved be made in a medium directed to the public at large. The district court similarly concluded that the term 'advertising' as used in the exclusionary provision referred to promotional material directed to the public at large, especially since the term is used in conjunction with two other terms that connote widespread public dissemination, 'broadcasting' and 'telecasting.' "

The foregoing authorities are persuasive. We find that, in sum, the term "advertising" as used in Liberty Mutual's policy means public or at least widely disseminated solicitation or promotion.

Regrettably, the trial court's findings of fact and conclusions of law are insufficient for us to meaningfully review its reasoning in support of its decision that Liberty Mutual affords coverage by operation of the policy's "advertising injury liability" coverage provisions. Nonetheless, on our own consideration and analysis, we reason and find that Liberty Mutual does not afford that coverage. There is not a scintilla, let alone a nanogram, of evidence linking Mash's alleged violation of the claimants' right of privacy to *advertising activity of MGM.* Again, the underlying claims did not occur in the course of advertising activity of MGM.

MGM suggests that if Liberty Mutual's advertising injury coverage does not apply, it remains that the trial court's judgment should be affirmed on the principle that affirmance is called for where the trial court was correct even though the grounds upon which it professed to proceed are not tenable. *Johnson v. Boeing Airplane Co.,* 175 Kan. at 283; see *Sutter Bros. Constr. Co. v. City of Leavenworth,* 238 Kan. 85, 93, 708 P.2d 190 (1985); *Carpenter v. Riley,* 234 Kan. 758, 765, 675 P.2d 900 (1984).

MGM proposes that coverage is available to it under the policy's personal injury liability coverage provisions even though coverage under the policy's advertising injury liability coverage provisions may not be available.

The policy provides:

" 'Personal injury' means injuries arising out of

. . . .

(3) a publication or utterance

. . . .

(b) in violation of an individual's right of privacy;

except publications or utterances in the course of or related to advertising, broadcasting, publishing or telecasting activities conducted by or on behalf of [MGM] shall not be deemed **personal injury.**"

By the plain language of the policy definition of "personal injury" and the policy's insuring agreement, "personal injury liability" coverage is unavailable to MGM. In regard to the underlying claims, there is no claim of injury arising out of an MGM publication or utterance whether or not "in the course of or related to advertising . . . activities conducted by or on behalf of [MGM]." There was no disclosure by Mash to others of any part of the recorded conversations.

As a part of its judgment, the trial court entered an award in favor of MGM and against Liberty Mutual for attorney fees pursuant to K.S.A. 40-256, which authorizes an attorney fees award where the action is on an insurance policy and the insurer against whom recovery is granted refused to pay without just cause or excuse. The attorney fees award against Liberty Mutual cannot now stand and must be reversed. An award for attorney fees pursuant to K.S.A. 40-256 may not be granted where the purported insured is unsuccessful in his or her action against the

purported insurer. *Girrens v. Farm Bureau Mut. Ins. Co.,* 238 Kan. 670, 681, 715 P.2d 389 (1986).

Whether attorney fees may have been recoverable by MGM against Liberty Mutual under the general insuring agreement provision imposing upon Liberty Mutual the duty to defend is not an issue raised in the trial court, addressed by the trial court, or raised on appeal. That being so, the question is not before us for resolution.

In view of our stated conclusions, we need not and do not address the other questions raised as issues for our consideration either on the appeal or the cross-appeal.

Reversed on appeal. Affirmed on cross-appeal.