No. 67,067

MGM INC., and JOHN MASH, *Appellees/Cross-Appellants,* v. LIB-
ERTY MUTUAL INSURANCE COMPANY, *Appellant/Cross-Appellee.*

(855 P.2d 77)

Opinion filed June 16, 1993.

*Lynn D. Preheim,* of Morrison & Hecker, of Wichita, argued the cause
and was on the brief for appellant/cross-appellee.

*James R. Schaefer,* of Wichita, argued the cause and was on the briefs
for appellees/cross-appellants.

The opinion of the court was delivered by

MCFARLAND, J.: This is an action by insureds against the de-
fendant insurance company seeking: (1) a determination that the
comprehensive general liability insurance policy in question af-
forded coverage for and a duty to defend against lawsuits filed
by employees and former employees of insureds; (2) a judgment
reimbursing the insureds for monies paid out in settlement of
said lawsuits and satisfying the balance of said settlement; and
(3) payment of the insureds' attorney fees arising from defense
of said actions and the prosecution of the action herein as well
as certain consequential damages arising from the insurer's breach
of the insurance contract. The defendant insurance company ap-
pealed from the judgment of the district court finding there was
coverage and a duty to defend and ordering the insurance com-

pany to pay the settlement and the requested attorney fees. The insureds cross-appealed from the refusal of the district court to consider or allow the requested consequential damages. The Court of Appeals reversed the district court's judgment against the insurance company, holding there was no coverage or duty to defend relative to said lawsuits. *MGM, Inc. v. Liberty Mut. Ins. Co.*, 17 Kan. App. 2d 492, 839 P.2d 537 (1992). The matter is before us on petition for review.

The facts may be summarized as follows.

MGM, Inc., (MGM), is a Kansas corporation that owned and operated a Western Sizzlin Steak House, on Rock Road in Wichita, at all pertinent times herein. Defendant John Mash was the president of MGM. Telephone service at the restaurant consisted of a pay phone located in a frequently used area and two non-pay telephones located in the manager's office. The office was kept locked in the manager's absence. No other employee worked in the office. In January 1988, Mash became concerned over telephone charges for unauthorized long distance calls originating from the manager's office. He wanted to find out which employee or employees were making these calls. On January 27, 1988, Mash purchased and installed two telephone recording devices in the office ceiling. The employees were not advised of the installations. The devices would activate when the respective telephone receiver was picked up and would disconnect when the receiver was returned to its cradle.

Every few days Mash would listen to the tapes and rewind them for rerecording. On February 19, 1988, a plumber repairing a hot water pipe discovered the recording devices. That same day, Mash removed the devices.

On May 19, 1988, Mash was contacted by an attorney who advised that she represented two MGM employees, that the use of the recording devices was a criminal offense, that lawsuits were being considered based upon invasion of privacy, and that the matter could be resolved by paying each client $10,000.

That same day Mash called defendant Liberty Mutual Insurance Company (Liberty Mutual), relayed the facts of his visit from the employees' attorney and asked if MGM's liability insurance policy issued by Liberty Mutual would provide coverage in this situa-

tion. The individual Mash talked to was Viola Schuckman, a claims supervisor. Bill Smith, claims manager, was absent at the time. The conversation lasted about 30 minutes. Schuckman told Mash that she did not think there was coverage as the conduct giving rise to the claims was an illegal act, but that she would check the policy and get back with him. She also advised that if suit were filed, the company would evaluate the allegation for coverage. Mash then contacted his own attorney, James Schaefer, and relayed the events which had occurred. On advice of Schaefer, Mash told Schuckman to contact Schaefer with the company's response to the coverage matter. On May 20, 1988, Schuckman contacted Schaefer. She advised him that she did not think there was coverage for a criminal act, but that "if any lawsuits were filed, he should submit the lawsuits to us so we could review the allegations and make a determination at that point whether there was any coverage." Subsequently, Schuckman conferred with the claims manager as to what had transpired up to that point, and he concurred with Schuckman's initial belief that there was no coverage. Six petitions were filed on June 14, 1988, and Schaefer forwarded these to Liberty Mutual.

Coverage was denied based on the petitions, the policy, and the conversations with Mash. No additional investigation was done. Ten petitions were ultimately filed. MGM settled these for $100,000 ($10,000 for each plaintiff).

This action was brought seeking a determination that coverage existed and that the insurer's duty to defend had been breached and damages for that breach. The district court held there was coverage under the "advertising injury" provision of the policy and that the insurer breached its duty to defend. Liberty Mutual was ordered to pay: (1) $55,000, which was the amount paid out in settlement by MGM and Mash; (2) $45,000, which was the balance due on the settlement of the lawsuits; (3) $57,786 for attorney fees; and (4) prejudgment interest and costs. Liberty Mutual appealed therefrom, and MGM and Mash cross-appealed the district court's refusal to consider certain claimed consequential damages.

We turn now to the issues in the appeal of Liberty Mutual. The district court found there was coverage and a corresponding duty to defend under the "advertising injury" portion of the

policy. The plaintiffs did not claim coverage under such policy provisions. They relied, instead, on personal injury coverage policy provisions. Before us and the Court of Appeals, the plaintiffs do not argue that the district court's reliance on the "advertising injury" portion was correct.

Instead, they argue the judgment of the district court should be affirmed on the basis that it was correct for the wrong reason—specifically, that there was coverage and a duty to defend under the personal injury policy provisions. The Court of Appeals opinion herein discusses the "advertising injury" policy provisions and correctly concludes the conduct giving rise to the claims herein is unrelated to advertising activities and such coverage is inapplicable. Little would be gained, under the circumstances herein, from further discussion of the "advertising injury" policy provisions.

We turn then to the question of whether there was coverage and a duty to defend under personal injury policy provisions. Liberty Mutual contends there was no coverage as: (1) the evidence is uncontroverted that there was no publication or utterance of the intercepted telephone conversations and hence the employees' claims were not included within the policy personal injury definitions; and (2) coverage was specifically excluded as the conduct arose out of a wilful violation of penal statutes (K.S.A. 21-4002 and 18 U.S.C. § 2511 [1988]).

We shall first consider whether there was coverage under the personal injury provisions of the policy. The definitions contained therein provide:

" 'Personal Injury' means injury arising out of one or more of the following offenses committed during the policy period:

   (1)   false arrest, detention, imprisonment, or malicious prosecution;
   (2)   wrongful entry or eviction or other invasion of the right of private occupancy;
   (3)   *a publication or utterance*
       (a)  of a libel or slander or other defamatory or disparaging material, or
       (b)  *in violation of an individual's right of privacy;*
       except publications or utterances in the course of or related to advertising, broadcasting, publishing or telecasting activities conducted by or on behalf of the **named insured** shall not be deemed **personal injury**." (Emphasis supplied.)

Liberty Mutual is correct in its statement that the evidence is uncontroverted that Mash never disclosed the content of or discussed the recorded conversations with anyone. Hence, there was no publication or utterance in violation of an individual's right of privacy and no coverage under said policy provisions.

This determination does not, however, resolve the duty to defend question. The petitions filed by the employees and former employees each alleged disclosure of the recorded conversations. In *State Farm Fire & Casualty Co. v. Finney*, 244 Kan. 545, 553-54, 770 P.2d 460 (1989):

"The duty to defend arises whenever there is a 'potential of liability' under the policy. *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.*, 212 Kan. 681, 512 P.2d 403 (1973). The insurer determines if there is a potential of liability under the policy by examining the allegations in the complaint and considering any facts brought to its attention or which it could reasonably discover. Where a petition alleges an act that is clearly not covered, for example, that the defendant acted willfully and intentionally, a declaratory judgment would then be proper to determine the issue of coverage, since there would [be] no 'potential of liability' under the policy for intentional acts. Where the complaint alleges both a negligent and intentional act, these alleged facts give rise to the potential for liability and the duty to defend arises. 212 Kan. at 686."

In *Patrons Mut. Ins. Ass'n v. Harmon*, 240 Kan. 707, 710, 732 P.2d 741 (1987), we stated:

"The possibility of coverage may be remote, but if it exists the [insurance] company owes the insured a defense. The possibility of coverage must be determined by a good faith analysis of all information known to the insured or all information reasonably ascertainable by inquiry and investigation."

Here, Liberty Mutual conducted no investigation before denying coverage and defense. If these were the only applicable policy provisions, it could well be concluded that a duty to defend was owed. However, the policy contains the following exclusion:

"(B) This insurance does not apply:

. . . .

(2) to personal injury or advertising injury arising out of the wilful violation of a penal statute or ordinance committed by or with the knowledge or consent of the insured."

The concealed recording devices were intentionally installed by Mash, the conversations intentionally recorded, and the recordings intentionally listened to by Mash. Wilful and intentional

are synonymous. See Websters New Collegiate Dictionary 1341 (1977): "2: done deliberately: INTENTIONAL *syn.*" See also K.S.A. 21-3201(2), which provides:

"(2) Willful conduct is conduct that is purposeful and intentional and not accidental. As used in this code, the terms 'knowing,' 'intentional,' 'purposeful,' and 'on purpose' are included within the term 'willful.' "

K.S.A. 21-4002 provides:

"(1) Breach of privacy is knowingly and without lawful authority:

(a) Intercepting, without the consent of the sender or receiver, a message by telephone, telegraph, letter or other means of private communication."

18 U.S.C. § 2511 provides:

"(1) Except as otherwise specifically provided in this chapter any person who—

(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;

. . . .

shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5)."

Disclosure of information intercepted is not an element of either offense—the interception itself completes the offense. MGM and Mash argue that there is evidence that of the employees who sued two or three knew of the existence of the recording devices and this is the equivalent of consent. Note, the employees denied such knowledge. No authority is cited for the proposition that such knowledge of the existence of the recording devices would be a defense to a prosecution under either statute.

We conclude the wilful violation of a penal statute exclusion is controlling on the duty to defend issue and, if reached on the coverage issue, it would have been applicable therein to deny coverage. Thus, there was no coverage afforded by the policy or duty to defend the lawsuits filed herein by the employees and former employees, and the district court erred in holding otherwise and awarding damages to the plaintiffs herein. This is the same result reached by the Court of Appeals and, like said court, this determination renders moot the balance of the issues raised in the appeal of Liberty Mutual and the cross-appeal of MGM

and Mash as they all relate to the trial court's computation of damages herein.

The judgment of the Court of Appeals is affirmed. The judgment of the district court is reversed; the cross-appeal is dismissed.

HOLMES, C.J., and DAVIS, J., not participating.

MARLA J. LUCKERT and TERRY L. BULLOCK, district judges, assigned.