T.C. JEFFERSON *v.* STATE of Arkansas

CR 96-655                                        941 S.W.2d 404

Supreme Court of Arkansas
Opinion delivered April 7, 1997

*Thomas D. Deen*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant T. C. Jefferson was serving time at the Arkansas Department of Correction's Delta Regional Unit for having committed rape when, on September 20, 1994, he stabbed three fellow inmates — James Jerry, Anthony Monts, and Rusty Cook. Jerry and Monts died. Jefferson confessed to the stabbings, and was charged with two counts of capital murder and one count of attempted capital murder.

At trial, Jefferson's defense was that he acted in "preemptive" self-defense, stating the three men would have killed him if he had not killed them first. The jury found him guilty of the capital murder of Jerry, of the first-degree murder of Monts, and of the attempted capital murder of Cook. He received respective sentences of life imprisonment without parole, life, and sixty years. Jefferson appeals, raising three points for reversal.

Jefferson's first argument arises from the jury's visit to view the crime scene. At trial, both the State and the defense urged the judge to allow the jurors to visit the prison, so they could view the kitchen and dining rooms where the stabbings occurred. Although he initially was against the idea, the judge relented. Defense counsel and the State persuaded the judge that the jury could get the smell, feel, and sounds of the penitentiary that it could not get from pictures, video, and testimony. Arrangements were made to transport the jury members to the correction facility, and the trip, plus the viewing, took one and one-half hours. Immediately prior to recessing court for the trip, the judge instructed the jurors as follows:

> Ladies and gentlemen, vans are — a van is available for your transport to the correctional facility and what we are going to do is recess. As I understand the procedure, you will just be shown the area of the inmate dining room and the kitchen area. You will not be able to ask any questions or you will not be able to elicit any testimony from anybody. Therefore, based upon what you have heard, the testimony you've already heard and other evidence introduced, this will just be additional opportunity for

you to determine what the facts are. We anticipate it will take approximately thirty minutes to get there, thirty minutes to come back, and probably thirty minutes there, including going through security. So, we will take a recess and the bailiff will escort everybody downstairs. I understand a van is available. A bailiff will drive the van along with the twelve members of the jury.

After the judge gave the foregoing instructions, neither the defense counsel nor the prosecutor objected that the judge's instructions were deficient or that the procedures utilized for the viewing were improper. Neither did the defense ever complain at trial that any improper communication or contact occurred involving any member of the jury. Nevertheless, Jefferson submits that the trial court's instructions did not conform with Ark. Code Ann. § 16-89-118 (Repl. 1987), which mandates the procedure to be employed in a jury view. In particular, he argues the trial court erred in failing to instruct, under oath, the officer (bailiff), taking the jury for viewing, to keep the jurors from communicating with others about the case. *See* § 16-89-118(b)(2). Jefferson further submits that, based upon this court's interpretation of this same statute in *Baxter v. State*, 225 Ark. 239, 281 S.W.2d 931 (1955), we should reverse and remand his case for a new trial, even though Jefferson never objected to the trial judge's noncompliance with the statute or showed he suffered any prejudice as a result of such noncompliance.

In *Baxter*, the defendant, like Jefferson in the present case, requested that the jury inspect the crime scene, and the trial court granted the request. Although § 16-89-118(b)(2) [then Ark. Stat. Ann. § 43-2120 (1947)] required the court officers, escorting the jury, to be "sworn to suffer no person to speak or communicate with the jury on any subject connected with the trial, nor to do so themselves," the record does not reveal that the trial court administered the officer the oath. Nor does the record reflect Jefferson requested the oath be given.

In a split decision, the *Baxter* court reversed and remanded the case, holding that § 16-89-118(b)(2) made it mandatory that officers conducting a jury to a crime scene be required to take the statutory oath, and stating further that it was not for the court to say no harm was done. In a dissenting opinion, Justice George

Rose Smith pointed out that the majority opinion conflicted with the court's prior holding in *Atterberry v. State*, 56 Ark. 515, 20 S.W. 411 (1892), but, the majority court never overruled *Atterberry*. *Atterberry*, too, involved the matter of administering a special oath to an officer in charge of a jury, and the trial court's failure to administer the oath before the jury went into deliberation. However, the *Atterberry* court affirmed the defendant's conviction, holding the defendant had waived the mandatory giving of the oath because he never objected or asked the trial court to administer the oath, and no prejudice was shown resulting from the trial court's failure to swear the officer.

■ Any confusion over whether *Atterberry* or *Baxter* controls jury-view situations such as the one before us now was laid to rest when this court decided *Berna v. State*, 282 Ark. 563, 670 S.W.2d 434 (1984). *Berna*, itself, did not involve § 16-89-118, but it did concern a trial court's failure to comply with the mandatory statutory provisions [Ark. Stat. Ann. § 39-210 (Supp. 1983)] establishing the manner by which jurors shall be summoned. While the *Berna* court stated that it did not approve the procedure used by the trial court and circuit clerk in selecting the defendant's jury panel, it held that some prejudice must be shown in order to find grounds to reverse a conviction. The court further announced the rule that no longer is it presumed that simply because an error is committed it is prejudicial error. Quoting from *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548 (1984), the *Berna* court said the following:

> ■ This Court has long held that "[a litigant] is entitled to a fair trial but not a perfect one," for there are no perfect trials. *Brown v. United States*, 411 U.S. 223, 231-232 (1973), quoting *Bruton v. United States*, 391 U.S. 123, 135 (1968), and *Lutwak v. United States*, 344 U.S. 604, 619 (1953). Trials are costly, not only for the parties, but also for the jurors performing their civic duty and for society which pays the judges and support personnel who manage the trials. It seems doubtful that our judicial system would have the resources to provide litigants with perfect trials, were they possible, and still keep abreast of its constantly increasing case load . . . .

We have also come a long way from the time when all trial error was presumed prejudicial and reviewing courts were considered "citadels of technicality." *Kotteakos v. United States*, 328 U.S. 750, 759 (1946), quoting Kavanaugh, Improvement of Administration of Criminal Justice by Exercise of Judicial Power, 11 A.B.A.J. 217, 222 (1925). The harmless error rules adopted by this Court and Congress embody the principle that courts should exercise judgment in preference to the automatic reversal for "error" and ignore errors that do not affect the essential fairness of the trial. *See Kotteakos*, 328 U.S., 759–760.

This court's decision in *Berna* gives added strength and support to its earlier holding in *Atterberry*. Accordingly, we conclude that, even though the trial court here did not fully comply with § 16–89–118 by administering an oath to the officer conducting a jury view, the trial court's error did not affect the essential fairness of Jefferson's trial. Jefferson was required to object to the officer's taking charge of the jury without receiving the special statutory oath and to show that some misconduct by a juror or officer resulted. Here, the trial court admonished the jurors that they would not be able to ask questions of anybody, they were to determine the facts, and they would be escorted by the court's bailiff. Although the trial court did not administer the statutory, special oath to its bailiff, nothing in the record remotely suggests that any officer or juror misconduct occurred or that prejudice resulted during the jury's trip to the correctional facility. Therefore, we reject Jefferson's argument that, in these circumstances, the trial court's failure to comply with § 16–89–118 requires reversal.

Before leaving Jefferson's first argument, we address his reference to *Grinning v. City of Pine Bluff*, 322 Ark. 45, 907 S.W.2d 690 (1995), wherein this court, citing earlier cases, reiterated the proposition that the right to a jury trial is not subject to the contemporaneous–objection rule, and such a right may be raised for the first time on appeal. Specifically, the *Grinning* court, citing *Winkle v. State*, 310 Ark. 713, 841 S.W.2d 589 (1992), stated that the denial of the right to trial by jury in a criminal case, without the requisite waiver in accordance with the law, is a serious error for which the trial court should intervene, and is therefore an exception to the contemporaneous–objection rule. *See Wick v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980).

Jefferson suggests a trial court's error in failing to comply with § 16-89-118 is comparable to the type of serious error in *Grinning* and *Winkle*, where the defendant was deprived of his or her right to a jury trial. That being true, Jefferson argues he was not subject to the contemporaneous-objection rule, and it was unnecessary for him to raise the § 16-89-118 issue below as a prerequisite to arguing it on appeal. We disagree.

As this court explained in *Winkle*, the right to a trial by jury in a criminal case is a fundamental right of our jurisprudence and is recognized by the Magna Charta, the Declaration of Independence, the federal constitution, and our state constitution. The *Winkle* court further explained the right to jury trial is part of the basic structure of our courts, and every judge, on his or her own motion, should accord such a basic right.

Obviously, while a trial court's failure to give an officer the special oath required under § 16-89-118 might result in some misconduct or prejudicial error, such error does not encompass the type of fundamental or structural right this court sought to protect and ensure in *Grinning* and *Winkle*. Because Jefferson failed to object to the lower court's failure to comply with § 16-89-118, that failure alone is sufficient to affirm on his first point.

For his second point of error, Jefferson contends that the trial court erred by admitting into evidence a videotape showing the crime scene and victims' bodies, which was cumulative, inflammatory, and gruesome, thus prejudicing him. Jefferson argues that, he freely admitted to the stabbings, thus, the videotape's probative value was minuscule compared to its prejudicial effect, and the trial court erred by denying his motion for a mistrial based on the prejudicial nature of the videotape.

Jefferson relies on *Berry v. State*, 290 Ark. 223, 718 S.W.2d 447 (1986), where this court held that the admission of photographs was a matter subject to the trial court's discretion but explained that, "[T]he analysis should firmly emphasize the need for the trial court to carefully weigh the probative value of the photographs against their prejudicial nature, rather than promoting a general rule of admissibility which essentially allows automatic acceptance of all the photographs of the victim and crime scene

the prosecution can offer." In *Berry*, this court reversed the accused's murder conviction on the basis of unduly prejudicial photographs. *Id.* at 223. Jefferson claims that the videotape, like the photographs in *Berry*, added absolutely nothing of probative value to the numerous still photographs the State had previously introduced without objection. Jefferson's argument is without merit.

A videotape is admissible if it is relevant, helpful to the jury, and not prejudicial. *Hickson v. State*, 312 Ark. 171, 847 S.W.2d 691 (1993). Generally, the same considerations and requirements for admissibility that apply to photographs also apply to videotapes. *Williams v. State*, 316 Ark. 694, 874 S.W.2d 369 (1994). The admissibility of such evidence is in the sound discretion of the trial judge, whose discretion will not be set aside absent an abuse of that discretion. *Bradford v. State*, 306 Ark. 590, 815 S.W.2d 947 (1991). And while this court's decision in *Berry* holds that a trial court cannot admit photographs carte blanche, it only prohibits the admission of photographs whose prejudicial effect substantially outweighs any probative value.

In *Weger v. State*, 315 Ark. 555, 869 S.W.2d 688 (1994), this court held that no error occurred when the jury was shown both a videotape of the homicide scene and photographs of the victim's wounds. This court stated the well-settled law as follows:

> The mere fact that a photograph is inflammatory or is cumulative is not, standing alone, sufficient reason to exclude it. (Citation omitted.) Even the most gruesome photographs may be admissible if they assist the trier of fact in any of the following ways: by shedding light on some issue, by proving a necessary element of the case, by enabling a witness to testify more effectively, by corroborating testimony, or by enabling jurors to better understand the testimony. (Citation omitted.) Of course, if a photograph serves no valid purpose and could be used only to inflame the juror's passion, it should be excluded.

Here, the record reflects that the trial court carefully considered the admissibility of the videotape and allowed it into evidence, determining that it gave an overall perspective of the scene of the crime at the time the crimes were committed, and

was helpful to the jury's understanding of the nature and extent of the injuries as well. Further, the capital murder charges were based on the allegation that Jefferson caused the deaths after premeditation and deliberation, and the videotape showed where the victims were when they were assaulted and the distance Jefferson covered when stabbing his victims. While Jefferson agreed to a jury view and never objected to the introduction of photographs, he cannot by such admissions prevent the State from putting on its proof. *See Crow v. State*, 306 Ark. 411, 814 S.W.2d 909 (1991). In sum, we cannot say that the trial court abused its considerable discretion in weighing the probative value against prejudice before allowing the videotape to be admitted into evidence.

Jefferson's final point challenges the trial court's denial of his request to appear before the jury without shackles. During closing arguments in the guilt phase, Jefferson wept loudly and, while attempts were made by security officers and counsel to subdue him, the jury was escorted out of the courtroom. Subsequently, closing arguments resumed, and the jury returned its guilty verdicts. No further disruptions occurred.

On the next day, Jefferson's sentencing phase commenced and his counsel stated he did not want the jury to see Jefferson walk into the courtroom wearing shackles and handcuffs. He asked the trial judge to remove the jury from the courtroom until Jefferson was seated, but the judge denied his request. Jefferson claims the trial judge's denial was prejudicial error.

Recently this court stated the settled rule that it is not prejudicial, per se, when the defendant is brought into the courtroom handcuffed. *Stanley v. State*, 324 Ark. 310, 920 S.W.2d 835 (1996). In *Stanley* this court recognized the holding in *Illinois v. Allen*, 397 U.S. 337 (1970), where the Court said that, where it is essential to maintain dignity, order, and decorum in the courtroom, restraints may be used. Moreover, this court in *Hill v. State*, 285 Ark. 77, 685 S.W.2d 495 (1985), upheld the use of restraints where the defendant has been charged with violent offenses, engaged in disruptive behavior, or attempted escape.

Here, Jefferson certainly falls within two of the categories mentioned in *Hill* — Jefferson had previously been convicted

of rape, was presently charged with two counts of capital murder and one count of attempted capital murder, plus he had caused disruption during his trial. The shackles added nothing to the trial that was not already apparent from the nature of the case. *See Holloway v. Alexander*, 957 F.2d 529 (8th Cir. 1992). In these circumstances, we conclude that any general prejudice caused by the presence of the shackles could have been cured by the trial court's admonishment to the jury to disregard the shackles in its consideration of Jefferson's case, but Jefferson failed to request such an admonition.

· In accordance with Ark. Sup. Ct. R. 4-3(h), the record has been reviewed for trial errors prejudicial to Mr. Jefferson, and none has been found.

Because we find no merit in Jefferson's three points for reversal, we affirm.