TRI-STATE INSURANCE COMPANY *v.* B & L PRODUCTS, INC., d/b/a Bycin Industries, Inc.

CA 97-389                                          964 S.W.2d 402

Court of Appeals of Arkansas
Divisions II and III
Opinion delivered March 11, 1998

*Wright, Lindsey & Jennings*, by: *James M. Moody, Jr.*, and *J. Charles Dougherty*, for appellant.

*Bachelor, Newell & Oliver*, by: *C. Burt Newell*, for appellee.

JOHN F. STROUD, JR., Judge. This appeal arises from a summary judgment entered in a declaratory judgment action in Garland County, Arkansas, in favor of appellee, B&L Products, Inc., against appellant, Tri-State Insurance Company. We attempted to certify this appeal to the supreme court, but certification was refused. We affirm.

Appellant issued a commercial general liability (CGL) insurance policy to appellee in 1994. The policy provides coverage for any "'[a]dvertising injury' caused by an offense committed in the course of advertising [appellee's] goods, products, or services." In 1995, a company called Geographics, Inc., filed the underlying copyright-infringement action against appellee in federal court in the State of Washington. The copyright action involves paper products produced by appellee that are known as "Koolnotes" and paper products produced by Geographics that are known as "GeoNotes." Geographics learned that OfficeMax, a large retailer of office and school supplies, was selling appellee's Koolnotes, which according to Geographics were virtually identical to its GeoNotes.

Appellant refused to defend the underlying lawsuit on behalf of appellee, contending that the claim did not arise out of "advertising" as provided in the insurance policy. On March 8, 1996, appellee filed a complaint for declaratory judgment in the circuit court of Garland County, Arkansas, asking that the court declare that appellant must provide a full defense in the underlying copyright-infringement case and that appellant must fully indemnify appellee with respect to the underlying action, including costs, attorney's fees, expenses, and any judgment that might issue in the underlying action.

On October 7, 1996, appellant filed its motion for summary judgment, asserting that there were no genuine issues of material fact and that it was entitled to summary judgment as a matter of law. Appellee responded to the motion for summary judgment and filed its own countermotion for the same, agreeing that there were no genuine issues of material fact but asserting that it, rather than appellant, was entitled to summary judgment. The trial judge entered summary judgment in favor of appellee.

Appellant raises three points of appeal: (1) appellee failed to introduce in the declaratory judgment action the insurance policy and underlying copyright-infringement complaint as required by Rules 10(d) and 56(c) of the Arkansas Rules of Civil Procedure; (2) the underlying copyright-infringement complaint contains no allegation that appellee engaged in advertising activities; and (3) the underlying copyright-infringement complaint contains no allegation that appellee's copyright infringement was caused by advertising activities.

Under the first point, appellant argues that Rule 10(d) of the Arkansas Rules of Civil Procedure requires that a copy of the written instrument be attached as an exhibit to the pleading that asserts a claim or defense based upon the written instrument. Since appellee failed to attach the insurance policy and the underlying copyright-infringement complaint to its complaint for declaratory judgment, appellant argues that the trial court erred in granting summary judgment pursuant to Rule 56(c) of the Arkansas Rules of Civil Procedure. We disagree.

Neither party argued to the trial court that any pertinent language from the policy or the underlying complaint was missing. Moreover, in oral arguments before this court appellant's counsel was candid in responding to our questions on this point and acknowledged that the pertinent language from the policy and the underlying complaint was before us. In short, both parties moved for summary judgment in this case, alleging that there were no genuine issues of material fact, and both have acknowledged to this court that all pertinent provisions of the underlying complaint and insurance policy are before this court. We find no prejudicial error that would require us to reverse on this point. *See Jefferson v. State*, 328 Ark. 23, 941 S.W.2d 404 (1997).

Under the second point, appellant argues that the term "advertising" includes only promotional activities that are directed to the public at large; that it does not include a salesperson's one-on-one solicitation for sales; and that the underlying complaint in the Washington case did not allege that appellee engaged in "advertising" activities. We disagree.

The pertinent policy language provided coverage against any "'[a]dvertising injury' caused by an offense committed in the course of advertising [appellee's] goods, products, or services." The term "advertising injury" is defined in the policy as:

> [an] injury arising out of one or more of the following offenses: (a) Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; (b) Oral or written publication of material that violates a person's right of privacy; (c) Misappropriation of advertising ideas or style of doing business; or (d) Infringement of copyright, title or slogan.

The term "advertising" is not defined in the policy, and we have found no Arkansas cases defining the term in the context of a CGL policy.

■ Appellee's product promotion was not aimed at the general public, but rather at a small, targeted market of large retailers. Appellant contends that appellee's one-on-one sales solicitation cannot constitute "advertising" because it is not aimed at the public at large. Appellant acknowledges in its reply brief, however, that "some dictionaries include definitions of 'advertising' that require public dissemination and other definitions that do not." In attempting to give this term its plain, ordinary, and popular meaning in the context of this case, members of this court have also viewed the term differently. We therefore regard the term as ambiguous in the context of this case and construe it against the appellant as the drafter of the policy. *Hartford Fire Ins. Co. v. Carolina Cas. Ins.*, 52 Ark. App. 35, 914 S.W.2d 324 (1996). Construing the term "advertising" in the manner urged by the dissent would mean that appellee could never recover under this provision of the insurance policy because its product market is a relatively small group of large retailers, not the public at large. Accordingly, under the circumstances presented in this case, we find no error in the trial court's finding that the manner in which appellee promoted its product falls within the meaning of the term "advertising" under the policy, even though the product advertising was not aimed at the public at large.

■ Moreover, appellant acknowledges that the pleadings in the underlying action generally determine an insurance company's duty to defend. *Madden v. Continental Cas. Co.*, 53 Ark. App. 250, 922 S.W.2d 731 (1996). An insurer must defend the case if there is any possibility that the injury or damage may fall within the policy coverage. *Id.* It is the allegations made against the insured, however groundless, false, or fraudulent such allegations may be, that determine the duty of the insurer to defend the litigation against its insured. *Id.*

■ Paragraph nine of the underlying copyright-infringement complaint provided in pertinent part:

> On information and belief, since at least as early as July 13, 1995, B&L, with full knowledge of Geographics' rights, has been infringing Geographics' copyrights in and relating to the Subject Works by using, reproducing, displaying, distributing, marketing, and offering for sale unauthorized copies of each of the Subject Works. Among other things, B&L has been manufacturing, distributing, and offering to sell memo pads under the mark KOOLNOTES which are copies of the Subject Works . . . .

The prayer for relief in the underlying complaint provided in pertinent part:

> [That appellee] be enjoined from . . . marketing, offering, selling, disposing of, licensing, leasing, transferring, displaying, advertising, reproducing, developing, or manufacturing any work derived or copied from any of the Subject Works . . . .

We find no error in the trial court's finding that the underlying complaint contained sufficient allegations of appellee engaging in "advertising" activities.

Under its last point, appellant argues that the underlying complaint contains no allegation that appellee's copyright infringement was *caused by* advertising activities. Appellant argues that coverage only extends to an advertising injury that is "caused by an offense committed in the course of advertising [the insured's] goods, products or services," and that the policy's causation requirement was not satisfied in this case because the in-person sales talk, even if regarded as "advertising," was not the cause of the alleged copyright infringement.

Paragraph nine of the underlying complaint alleges that appellee "has been infringing Geographics' copyrights in and relating to the Subject Works *by* using, reproducing, displaying, distributing, marketing, and offering for sale unauthorized copies of each of the Subject Works." (Emphasis added.) The prayer for relief asks that appellee "be enjoined from . . . marketing, offering, selling, disposing of, licensing, leasing, transferring, displaying, advertising, reproducing, developing, or manufacturing any work derived or copied from any of the Subject Works . . . ."

■ Once again, we find no error in the trial court's finding that the underlying complaint contained sufficient allegations that appellee's copyright infringement was caused by its advertising activities.

Affirmed.

MEADS, J., agrees.

ROBBINS, C.J., and AREY, J., concur.

JENNINGS and ROAF, JJ., dissent.

D. FRANKLIN AREY, III, Judge, concurring. I agree that this matter should be affirmed. This court is not empowered to ignore the rules of construction established by the supreme court. We should therefore affirm on the basis that we cannot construe the insurance policy since it is not in the record before us.

The commercial general liability insurance policy at issue has not been abstracted, nor does the policy appear in the record. As the prevailing opinion indicates, apparently the policy was not even produced before the trial court.

The applicable rules of construction set out by our supreme court require us to examine the insurance policy as a whole, in order to construe any part of it.

> [I]t may be said to be a settled rule in the construction of contracts that the interpretation must be upon the *entire instrument* and not merely on disjointed or particular parts of it. The whole context is to be considered in ascertaining the intention of the parties, even though the immediate object of inquiry is the meaning of an isolated cause.

*Fowler v. Unionaid Life Ins. Co.*, 180 Ark. 140, 145, 20 S.W.2d 611, 613 (1929)(emphasis supplied). Our supreme court has "consistently adhered" to the notion that the entire contract should be before it, in order to construe any part of the contract. *See First National Bank v. Griffin*, 310 Ark. 164, 170, 832 S.W.2d 816, 819 (1992).

This court adhered to the requirement that we review the entire contract in *Hartford Ins. Co. v. Brewer*, 54 Ark. App. 1, 922 S.W.2d 360 (1996).

> It is axiomatic that, to determine the rights and duties under a contract, we must determine the intent of the parties . . . . It is well settled that the intent of the parties is to be determined *from the whole context of the agreement*; the court must consider the instrument in its entirety. Clearly, it is an appellant's burden to bring up a record sufficient to demonstrate error. Without the contract in question, which may have spoken in any number of ways to the issue of the person or persons entitled to the policy proceeds, we cannot determine whether the trial court erred.

*Id.* at 3, 922 S.W.2d at 362 (citations omitted)(emphasis supplied). In *Hartford*, the insurance contract did not appear in the abstract or the record. Based upon the rules quoted, we concluded that the appellant had failed in its burden to produce a record sufficient to demonstrate error, and we affirmed. *Id.*

In the instant case, we cannot construe the term "advertising," because the entire policy is not before us. "The rights and liabilities of the parties to an insurance contract must be determined by considering the language of the entire policy . . . . Whatever the construction of a particular clause standing alone may be, it must be read in connection with other clauses limiting or extending the insurer's liability." *Continental Casualty Co. v. Davidson*, 250 Ark. 35, 41-42, 463 S.W.2d 652, 655 (1971)(citations omitted). The prevailing opinion neither cites authority for the proposition that we can ignore this mandate nor cites any authority for the proposition that these rules can somehow be "waived" by the parties. Since the appellant failed to bring up a record sufficient to demonstrate error, the judgment should be affirmed.

ROBBINS, C.J., joins.

JOHN E. JENNINGS, Judge, dissenting. While I agree with Judges Stroud and Meads that the absence of the insurance policy itself from the record does not preclude our reaching the merits in this case, I cannot agree to affirm. The issue posed is whether one-on-one sales solicitations may constitute advertising under the terms of a commercial general liability insurance policy. This was precisely the question for decision in *Monumental Life Ins. Co. v. United States Fidelity and Guar. Co.*, 617 A.2d 1163 (Md. Ct. Spec. App. 1993). There, the court held that a reasonable lay person would not construe "advertising activity" in the context of the CGL policies to include the one-on-one sales activity of Monumental's agents. The court held that "advertising" means *advertising*, i.e., "widespread distribution or announcements to the public." *Monumental Life Ins. Co.*, 617 A.2d at 1173.

The Supreme Court of Vermont has reached the same conclusion. *Select Design, Ltd v. Union Mut. Fire Ins. Co.*, 674 A.2d 798 (Vt. 1996). *See also Tschimperle v. Aetna Casualty & Surety Co.*, 529 N.W.2d 421 (Minn. Ct. App. 1995); *Bank of the West v. Superior Court*, 833 P.2d 545 (Cal. 1992); *International Ins. Co. v. Florists' Mut. Ins. Co.*, 559 N.E.2d 7 (Ill. App. Ct. 1990); *Playboy Enter., Inc. v. St. Paul Fire & Marine Ins. Co.*, 769 F.2d 425 (7th Cir. 1985); *MGM, Inc. v. Liberty Mut. Ins. Co.*, 839 P.2d 537 (Kan. Ct. App. 1992), *aff'd* 855 P.2d 77 (Kan. 1993); *Smartfoods, Inc. v. Northbrook Property & Casualty Co.*, 618 N.E.2d 1365 (Mass. App. Ct. 1993); *Fox Chem. Co., Inc. v. Great Am. Ins. Co.*, 264 N.W.2d 385 (Minn. 1978).

There are cases to the contrary: *New Hampshire Ins. Co. v. Foxfire, Inc.*, 820 F.Supp. 489 (N.D. Cal. 1993); *Merchants Co. v. American Motorists Ins. Co.*, 794 F.Supp. 611 (S.D. Miss. 1992); *John Deere Ins. Co. v. Shamrock Indus., Inc.*, 696 F.Supp. 434 (D. Minn. 1988), *aff'd* 929 F.2d 413 (8th Cir. 1991).

In rejecting the view taken in the three federal cases and adopting what it described as the "majority view," the Vermont Supreme Court said:

> Although we strictly construe the policy provisions against the insurer, we must read the policy provisions according to their

plain, ordinary meaning. The majority view does so. Our conclusion is not undercut by the fact that there is some disagreement among courts as to the proper meaning of advertising.

*Select Design,* 674 A.2d at 802 (citations omitted). I agree with both the reasoning of and the conclusion reached by the Supreme Court of Vermont and therefore respectfully dissent.

ANDREE LAYTON ROAF, Judge, dissenting. I agree with the majority and the concurring judge that the absence of the insurance policy from the record does not prevent us from reaching the merits of this case. We have in the record, and properly abstracted, everything the trial judge had before him when he determined that summary judgment should be granted to B & L Products, Inc. The issue is thus whether the trial court properly granted summary judgment based on the information available to him at the time. I do not believe that he did, and would reverse and remand for entry of summary judgment in favor of the appellant, Tri-State Insurance Company.

It is abundantly clear that B & L Products was being sued for copyright infringement — the willful appropriation of the product design of Geographics, Inc. Had the object allegedly copied by B & L Products been a device rather than a notepad, the action against it would have been for patent infringement rather· than copyright infringement. In the context of the litigation against B & L Products, the two terms are thus synonymous, and the act complained of clearly falls outside the definition of "advertising injury."

The trial court, in granting summary judgment, found that "the infringing activities of B & L Products, Inc., arose out of advertising activities of B & L Products." This is certainly not correct, for advertising did not and could not cause this copyright infringement. The injury to Geographics arose from the sales of products bearing its copyrighted designs, however, those products might have found their way onto the shelves of the Office Max stores. Consequently, it is irrelevant how advertising is defined, for it is not an advertising offense that is complained of.

Moreover, although I agree that the term advertising should be construed broadly and given its plain, ordinary and popular

meaning, this is precisely what the trial court failed to do. *See, e.g., Columbia Mut. Cas. Ins. Co. v. Coger,* 3 Ark. App. 85, 811 S.W.2d 345 (1991). Here, the offense complained of was not committed in the course of advertising B & L Product's goods, products or services, it was committed when the goods were manufactured. I cannot read the language setting forth as a covered offense, the "[i]nfringement of copyright, title or slogan," to extend beyond an advertising campaign or scheme to the product itself.

For the foregoing reasons, I would reverse and remand for entry of summary judgment in favor of Tri-State Insurance Company.